**Affirmed as Modified and Opinion filed January 24, 2013.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00637-CV

---

**RICHARD MARK WATTS, Appellant**

**V.**

**RUTH OLIVER, Appellee**

---

**On Appeal from the 387th District Court**
**Fort Bend County, Texas**
**Trial Court Cause No. 06-DCV-148449**

---

### O P I N I O N

In this appeal from a final order in a suit to modify the parent-child relationship, appellant Richard Mark Watts complains that the trial court erred by: (1) limiting expert testimony relevant to the child's best interest; (2) failing to enter findings of fact and conclusions of law; (3) awarding Ruth attorney's fees when Richard's petition was not frivolous; (4) awarding Ruth advisory appellate attorney's fees; and (5) transferring the case to Harris County on the court's own

motion. For the reasons explained below, we modify a portion of the trial court's judgment and affirm as modified.

## *Background*

Richard and Ruth were married in 1996. In 2003, they had a son, R.A.W. Richard and Ruth were divorced by a final decree of divorce signed May 23, 2007, as supplemented by an order signed August 3, 2007. The decree was signed by the judge of the 387th District Court of Fort Bend County. At the time of the divorce, Ruth and R.A.W. lived in Bellaire, Texas, and Richard was living in Houston. After the divorce, Richard moved to Missouri City. The parties had many disagreements concerning R.A.W.'s upbringing; communication and co-parenting problems were ongoing.

About a year after the divorce, Ruth made plans to remarry and move to Cypress, Texas. On August 5, 2008, Ruth notified Richard by email of her plans to move and relocate R.A.W. to a new school. Richard objected to the move and five days later filed suit seeking to change primary custody of R.A.W. Ruth filed a counter-petition to modify, requesting her own affirmative relief.

Trial began on February 28, 2011, and proceeded off and on for eight days, ending on April 14, 2011. After Richard rested, the trial court partially granted Ruth's request for judgment. When Ruth concluded her case the next day, the trial court denied Richard's request to change primary custody and rendered judgment on the remaining issues. The trial court signed a final order on May 24, 2011. Richard filed a request for findings of fact and conclusions of law and a one-page motion for new trial. The trial court did not make findings of fact and conclusions of law, and Richard's motion for new trial was overruled by operation of law. This appeal followed.

2

## *Abuse of Discretion*

Richard complains that the trial court erred or abused its discretion by: (1) limiting expert testimony relevant to the child's best interest; (2) failing to sign findings of fact and conclusions of law; (3) awarding Ruth attorney's fees when Richard's petition was not frivolous; (4) awarding Ruth appellate attorney's fees that were advisory; and (5) transferring the case to Harris County on the court's own motion.

Because a trial court has broad discretion to decide the best interest of a child in family-law matters such as custody, visitation, and possession, we review a trial court's modification ruling under an abuse-of-discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or when it clearly fails to correctly analyze or apply the law. *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We also review the trial court's decision to exclude evidence and to award attorney's fees for abuse of discretion. See *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (per curiam) (decision to admit or exclude evidence); *In re C.Z.B.*, 151 S.W.3d 627, 634 (Tex. App.—San Antonio 2004, no pet.) (decision to grant or deny award of attorney's fees and costs).

## 1.    Limitation on Expert Testimony

In his first issue, Richard contends the trial court erred in limiting the expert testimony of Dr. Kit Harrison, a psychologist who had provided counseling and therapy to Richard. According to Richard, the trial court's limitation on Dr. Harrison's testimony was an excessive discovery sanction that harmed Richard's case because the trial court declined to hear testimony that was relevant to the best interest of the child. Ruth responds that Richard has waived his complaint by

3

failing to make an offer of proof specifically summarizing Dr. Harrison's anticipated testimony and its relevance.

Before trial resumed on April 13, 2011, the trial court and counsel for the parties had discussions off the record about additional witnesses that may be called and the length of time remaining for trial. On the record, Ruth objected to Richard's intention to call Dr. Harrison, asserting that Richard had failed to timely supplement discovery regarding this witness and requesting that his testimony be excluded. In response, Richard offered this summary of Dr. Harrison's testimony:

> We'll offer testimony regarding efforts taken by [Richard] to co-parent with [Ruth] and to minimize conflicts with the child.
>
> We'll also offer testimony regarding the effects of [Ruth's] actions on the child, potentially on the child's relationship with both parents.
>
> We'll also offer testimony regarding general psychological issues affecting children of divorced parents and of parents who engage in actions [Ruth] has engaged in and [Richard's] efforts in working with Dr. Harrison to minimize such harm to the child.

The trial court ruled that Dr. Harrison's testimony would be limited in scope to therapy he had provided to Richard; however, the trial court specified that if Dr. Harrison's testimony were ultimately to rely on documents which had not been timely produced in discovery, Dr. Harrison might be precluded from testifying further.

Later in the day, Richard finished his case in chief with the exception of calling Dr. Harrison. Ruth's counsel objected to calling Dr. Harrison out of order, and at that point the trial court ruled that Dr. Harrison would not be allowed to testify. Ruth then moved for judgment on some of the affirmative relief Richard requested. The trial court granted a partial judgment on certain issues, but did not rule on Richard's request for a modification of primary conservatorship.

4

When trial resumed the next morning, the trial court announced that it had reconsidered its decision regarding Dr. Harrison's testimony. The trial court advised that Dr. Harrison would be allowed to testify that day over Ruth's objection, but his testimony remained limited to Dr. Harrison's therapy with Richard. Richard then presented Dr. Harrison's testimony. After Dr. Harrison testified, Richard did not ask the trial court to reconsider its earlier decision to grant judgment on some of Richard's requested relief, nor did Richard seek to make an offer of proof regarding the substance of Dr. Harrison's excluded testimony to augment the brief summary provided the day before.

Initially, we consider Ruth's contention that Richard has not preserved his complaint about the trial court's ruling limiting Dr. Harrison's testimony because he failed to make an offer of proof concerning the excluded testimony. *See* Tex. R. Evid. 103(a)(2). Rule 103(a) provides that error may not be predicated on a ruling that excludes evidence unless a substantial right of the party is affected, and the substance of the objection was made known to the trial court by offer of proof. *Id.*

In response, Richard argues that it was not necessary for him to have demonstrated the substance of what Dr. Harrison would have testified to, because the arbitrary restriction of his testimony alone was sufficient error to reverse and remand. To support his contention, Richard cites two cases from this court, *Van Heerden v. Van Heerden*, 321 S.W.3d 869 (Tex. App.—Houston [14th Dist.] 2010, no pet.) and *In re N.R.C.*, 94 S.W.3d 799 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). These cases, however, do not hold that error preservation is not required when a trial court excludes part of a witness's testimony in a suit affecting the parent-child relationship.

In both *Van Heerden* and *N.R.C.*, this court considered whether striking all fact witnesses of a party as a discovery sanction in a suit involving conservatorship issues constituted an excessive sanction that probably caused the rendition of an

improper judgment. *See Van Heerden*, 321 S.W.3d at 877–79; *In re N.R.C.*, 94 S.W.3d at 812–13. Here, however, the trial court did not strike all Richard's fact witnesses; the trial court merely limited the testimony of one witness. Further, in *Van Heerden*, failure to preserve error was not alleged regarding the excluded evidence. *See* 321 S.W.3d at 876–77. An error-preservation issue was raised in *N.R.C.*, and this court concluded that the appellant's offer of proof concerning three witnesses was sufficient because the offer described the substance of the proposed testimony, included a detailed letter prepared by one of the witnesses, and referenced the best interests of the child. *See* 94 S.W.3d at 806. These cases cited by Richard did not hold that an adequate offer of proof was not necessary to preserve error.

To adequately and effectively preserve error, an offer of proof must show the nature of the evidence specifically enough so that the reviewing court can determine its admissibility. *In re N.R.C.*, 94 S.W.3d at 806. The offer of proof may be made by counsel, who should reasonably and specifically summarize the evidence offered and state its relevance, unless already apparent. *Id.* If counsel makes such an offer, he must describe the actual content of the testimony and not merely comment on the reasons for it. *Id.*

Richard argues that Dr. Harrison's expertise could have provided "substantial evidence to support the merits of Richard's claims." But his counsel's description of Dr. Harrison's anticipated testimony at trial does not describe the actual content of his testimony; it merely comments generally on the nature of the evidence offered and the reasons for it.[1] *See In re N.R.C.*, 94 S.W.3d at 806. We conclude that counsel's description of Dr. Harrison's anticipated testimony is insufficient to preserve the issue for appeal because it is not specific enough to

---

[1] Moreover, counsel's description did not reference the best interest of the child standard. *See In re N.R.C.*, 94 S.W.3d at 806.

enable this court to determine its admissibility. *See id.*

Even if we held that Richard made a sufficient offer of proof, we would nevertheless conclude that Richard has not shown that the trial court abused its discretion in limiting Dr. Harrison's testimony. To show that the trial court abused its discretion, the appellant must demonstrate that: (1) the court erred in not admitting the evidence; (2) the excluded evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error probably caused the rendition of an improper judgment. *Van Heerden*, 321 S.W.3d at 875.

Because the offer merely refers to generalized categories of testimony, Richard has not demonstrated that the evidence would have been material to the trial court's decision or whether its exclusion was harmful. Notably, Richard does not contend on appeal that the evidence is legally or factually insufficient to support the trial court's conservatorship ruling or otherwise complain about the ruling. Absent a complaint about the trial court's substantive ruling, it is difficult to see how the exclusion of the evidence probably caused the rendition of an improper judgment.

Further, Dr. Harrison was permitted to testify regarding Richard's concerns about R.A.W.'s upbringing and the conflicts between Richard and Ruth. Dr. Harrison acknowledged, however, that he could not address the authenticity or veracity of Richard's concerns. Dr. Harrison also declined to offer testimony concerning whether he believed Richard was "competent to make important decisions" regarding R.A.W. Moreover, Dr. Harrison testified that he had never treated or evaluated R.A.W. and, in fact, he had seen R.A.W. only once when the child was in a waiting room with Richard in 2007. Thus, Dr. Harrison could not have testified to any personal knowledge of harm to R.A.W. because he never treated the child.

On this record, we cannot say that the trial court abused its discretion in

7

limiting Dr. Harrison's testimony. We overrule Richard's first issue.

## 2. No Findings of Fact and Conclusions of Law Filed

In his second issue, Richard contends the trial court erred by failing to sign findings of fact and conclusions of law. Under Texas Rule of Civil Procedure 296, when a party makes a proper and timely request for findings of fact and conclusions of law and the trial court fails to comply, harm is presumed unless the record affirmatively shows that the requesting party was not harmed by their absence. Tex. R. Civ. P. 296; *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam); *Haut v. Green Café Mgmt., Inc.*, 376 S.W.3d 171, 182 (Tex. App.— Houston [14th Dist.] 2012, no pet.).

It is undisputed that Richard timely filed his request for findings of fact and conclusions of law. But Richard concedes that he filed and served his notice of past due findings of fact and conclusions of law thirty-one days after filing his original request, missing the deadline by one day. *See* Tex. R. Civ. P. 297. Ruth responds that Richard's complaint regarding the court's failure to file findings of fact and conclusions of law is waived because he failed to meet the required deadlines.

In his reply brief, Richard contends the late-filed notice of past-due findings was nevertheless "timely" under Texas Rule of Appellate Procedure 33.1, because "it brings the trial court's error to the court's attention in sufficient time for the court to correct its error," citing *Solomon v. Steitler*, 312 S.W.3d 46, 58 (Tex. App.—Texarkana 2010, no pet.). Richard acknowledges that there is no case law directly on point to support his argument, but he cites *In re E.A.C.*, a case in which the trial court belatedly issued its findings of fact in response to a timely request, and the appellate court explained that in such a case, "the only issue that arises is whether the appellant was harmed." *See* 162 S.W.3d 438, 443 (Tex. App.—Dallas

8

2005, no pet.). Therefore, Richard contends, a late-filed notice of past-due findings should do no more than remove the presumption of harm.

Rule 33.1, titled "Preservation; How Shown," provides in relevant part:

(a) *In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) *complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure* . . . .

Tex. R. App. P. 33.1(a). Thus, Rule 33.1 requires not only a timely request, objection, or motion, but also requires that a party comply with the rules of procedure and evidence to preserve error for appeal. *See id.* 33.1(a)(1)(B).

Consistent with Rule 33.1(a), courts have held that a past-due notice not filed within the thirty-day deadline imposed by Rule 297—even only a few days late—is untimely and waives a complaint that the trial court failed to file findings of fact and conclusions of law. *See Haut*, 376 S.W.3d at 183 (holding that past-due notice filed three days late waived issue); *see also Las Vegas Pecan & Cattle Co. v. Zavala Cnty.*, 682 S.W.2d 254, 255 (Tex.1984) (holding appellant's complaint that trial court failed to file findings of fact and conclusions of law was waived when appellant filed past-due notice four days after deadline provided in earlier version of rule). On this record, therefore, we decline to overturn precedent from this court and the Supreme Court of Texas requiring that a party timely file its

9

request for findings of fact and conclusions of law and its past-due notice within the time frame specified by the rules of civil procedure.

Even if we were to presume Richard had not waived error, we would conclude that he was not harmed. When a trial court fails to file findings of fact and conclusion of law, error is harmful if it prevents an appellant from properly presenting a case to the appellate court. *Tenery*, 932 S.W.2d at 30; *Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 665 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Richard contends he can demonstrate harm because "he is forced to guess the grounds and nature of the attorney's fees awarded against him, which is otherwise challenged at issue 3." In his third issue, Richard posits that Ruth is not entitled to attorney's fees under either Family Code section 156.005 or 106.002. Thus, arguably one of two statutes governs the trial court's award of attorney's fees to Ruth. Richard has addressed the issues relevant to either possibility in his brief. Moreover, Richard does not identify any issue that he was unable to brief as a result of the trial court's failure to make findings of fact and conclusions of law. Therefore, Richard has not been prevented from properly presenting his attorney's-fees complaint to this court. *See Rumscheidt*, 362 S.W.3d at 665. We overrule Richard's second issue.

## 3.    Award of Attorney's Fees

In his third issue, Richard contends the trial court erred in awarding Ruth $80,000 in attorney's fees because Richard's petition was not frivolous. Richard argues that, absent any findings that his suit was filed frivolously or to harass Ruth, the trial court's award was not authorized under Family Code section 156.005. Alternatively, Richard argues that the award was not authorized under Family Code section 106.002 because the trial court did not order the attorney's fees "to be paid directly to [Ruth's] attorney"; rather, the judgment is awarded to Ruth and she

10

is authorized to enforce it. *See* Tex. Fam. Code § 106.002. Additionally, Richard contends that the interest rate on the judgment for attorney's fees and expenses exceeds the prevailing legal rate. Richard does not challenge the amount of the attorney's-fees award or whether the attorney's fees awarded were reasonable and necessary.

Ruth responds that the record contains no evidence that Richard timely raised his complaints with the trial court and therefore he has not preserved them for appeal.[2] Subject to her waiver argument, however, Ruth concedes that the interest rate applied is incorrect. Richard replies that he may raise his issues for the first time on appeal because, in this bench trial, he is challenging the legal and factual sufficiency of the evidence and contending that the damages awarded are excessive. *See* Tex. R. App. P. 33.1(d) (providing that a complaint regarding the legal or factual insufficiency of the evidence, including a complaint that damages are excessive or inadequate, may be made for the first time on appeal in a nonjury case).

As a general rule, an appellant must first complain to the trial court by a timely request, objection, or motion and obtain a ruling as a prerequisite for appellate review of that complaint, but the general rule does not apply to complaints about the sufficiency of the evidence in a trial to the court. *Office of Atty. Gen. of Texas v. Burton*, 369 S.W.3d 173, 175 (Tex. 2012) (per curiam); *see* Tex. R. App. P. 33.1(d). Liberally construing Richard's issue as challenging the legal sufficiency of the evidence regarding the entitlement to attorney's fees, we

---

[2] The entirety of the substantive portion of Richard's motion for new trial is as follows:

This court should grant a new trial in the best interest of the child and in the interest of justice. The prior possession schedule should be restored along with the prior rights, powers, privileges, and duties. This motion is not brought just for delay, but that justice may be done.

hold that he may raise the issue for the first time on appeal. *See* Tex. R. App. P. 33.1(d) & 38.9 (briefing rules to be construed liberally).

Family Code section 106.002 permits the award of attorney's fees and expenses in suits affecting the parent-child relationship, including modification proceedings:

> (a) In a suit under this title, the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney.
>
> (b) A judgment for attorney's fees and expenses may be enforced in the attorney's name by any means available for the enforcement of a judgment for debt.

*See* Tex. Fam. Code § 106.002; *Lenz v. Lenz*, 79 S.W.3d 10, 21 (Tex. 2002). The award of attorney's fees in a suit affecting the parent-child relationship is within the trial court's discretion. *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996).

The trial court's judgment awarding attorney's fees to Ruth provided as follows:

> IT IS ORDERED that good cause exists to award Ruth Oliver judgment against Richard Mark Watts in the amount of Eighty Thousand and NO/100 Dollars ($80,000.00) for reasonable and necessary attorney's fees and expenses incurred by Ruth Oliver to be paid to her attorney of record, Joel A. Nass, with interest at six percent (6%) per year compounded annually from the date the judgment is signed until paid. The judgment, for which let execution issue, is awarded against Richard Mark Watts. Ruth Oliver may enforce this judgment for attorney's fees and expenses by any means available for the enforcement of a judgment for debt.
>
> IT IS ORDERED that Ruth Oliver shall be responsible for the balance of her attorney's fees incurred on her behalf.
>
> IT IS ORDERED that Richard Mark Watts shall be responsible for his attorney's fees incurred on his behalf.

According to Richard, the trial court's award fails to comply with the requirements

of section 106.002 because the attorney's fees "would have to be awarded to the attorney, not the party, in order to be enforced in the attorney's name."

Under section 106.002, the trial court may render judgment for reasonable attorney's fees and order payment directly to an attorney. *See* Tex. Fam. Code § 106.002(a). The statute does not state that the party's attorney *must* be awarded the judgment. Further, although the statute provides that a judgment for attorney's fees and expenses may be enforced in the attorney's name, nothing in the statutory language requires that the judgment be paid directly to an attorney. *See id.* At least one sister court has reached the same conclusion. *See In re J.R.L.*, No. 09-03-553-CV, 2004 WL 2315120, at *2 (Tex. App.—Beaumont Oct. 14, 2004, no pet.) (mem. op.) (per curiam) (holding that trial court's award of attorney's fees to party rather than her attorney did not compel conclusion that award must have been based on section 156.005 and not section 106.002). Richard cites no authorities to support his interpretation of section 106.002. Considering the statute as a whole, it contains no terms which would prevent a trial court from awarding a judgment in the name of the party and giving them the right to enforce that judgment while ordering that any amounts recovered should be paid to the party's attorney.

We therefore hold that the trial court's award of attorney's fees was authorized under section 106.002 and, consequently, we do not reach Richard's alternative argument that the award was not authorized under section 156.005.

Richard further complains that the trial court misapplied the law in awarding a six-percent rate of interest on the attorneys-fees award. *See* Tex. Fin. Code § 304.003. Ruth argues Richard has waived his complaint about the interest rate because he failed to raise it in the trial court. In his reply brief, Richard contends that he was not required to preserve this complaint below according to the appellate rules because this was a bench trial and he is challenging the legal

13

sufficiency of the evidence and excessive damages. *See* Tex. R. App. P. 33.1(d). But Richard offers no authority for his argument that the trial court's failure to award the legally correct interest rate constitutes an issue of legal sufficiency or excessive damages. Moreover, Richard cites no case law applying Rule 33.1(d) in this context.

A complaint that the trial court misapplied the law must be raised in the trial court. *Solomon*, 312 S.W.3d at 61; *see also Basic Energy Serv., Inc. v. D-S-B Props., Inc.*, 367 S.W.3d 254, 263–64 (Tex. App.—Tyler 2011, no pet.) (holding that point of law not raised in bench trial was waived). This court and others have held that a complaint about the award of post-judgment interest is not preserved for appeal when the appellant failed to raise the issue in the trial court after a bench trial. *See, e.g.*, *Morton v. Hung Nguyen*, 369 S.W.3d 659, 677 (Tex. App.—Houston [14th Dist.] 2012, pet. filed) (trial judge awarded no pre-judgment interest despite finding entitlement to same; error not preserved); *Tucker v. Thomas*, ___ S.W.3d ___, No. 14-09-01081-CV, 2011 WL 6644710, at *15 (Tex. App.—Houston [14th Dist.] Dec. 20, 2011, pet. granted) (en banc) (holding appellant waived complaint that post-judgment interest rate on amicus attorney's fees was incorrect); *Keith v. Keith*, 221 S.W.3d 156, 173 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (trial court awarded 10% rather than 5% post-judgment interest; error not preserved); *Hachar v. Hachar*, 153 S.W.3d 138, 145 (Tex. App.—San Antonio 2004, no pet.) (holding that error was not preserved when appellants failed to apprise trial court of their objection to award of post-judgment interest at rate that exceeded the percentage rate permitted by the Texas Finance Code). Richard does not distinguish this precedent. We therefore overrule Richard's third issue.

## 4. Award of Attorney's Fees on Appeal

In his fourth issue, Richard contends the trial court erred in awarding Ruth

attorney's fees on appeal that were advisory. Specifically, Richard complains that the trial court granted a "speculative judgment that may or may not arise in the future" because "[t]here is no way to determine on what date the judgment is awarded or on what date the interest begins to accrue." Richard also complains the trial court erred by awarding post-judgment interest at the rate of six percent per year. According to Richard, this interest rate exceeds the maximum authorized by law, and the correct interest rate should be five percent. Although Ruth contends that Richard has waived his complaint concerning the post-judgment interest rate, Ruth acknowledges that the judgment should be clarified to specify more precisely when post-judgment interest begins to accrue.

Here, the trial court ordered Richard to pay Ruth's reasonable and necessary attorney's fees "in the event [Richard] files an *unsuccessful* appeal" to the court of appeals or the supreme court, and ordered that "[Ruth] shall be awarded a judgment against [Richard], for attorney's fees on appeal" (emphasis added). The trial court also ordered that each judgment "shall bear interest at six percent (6%) compounded annually from the date of judgment, for which let execution issue."

Richard did not raise his complaint about the post-judgment interest rate on appellate fees in the trial court. Therefore, as discussed in our analysis of issue three, his complaint is waived. *See Morton*, 369 S.W.3d at 677; *Keith*, 221 S.W.3d at 173; *Hachar*, 153 S.W.3d at 145.

Turning to Richard's argument that the trial court's award was speculative and advisory, we agree that the judgment for appellate attorney's fees fails to specify with certainty the date on which post-judgment interest should accrue.[3]

_____

[3] To the extent Richard argues that the award to Ruth was unconditional, we disagree. The trial court may not grant a party an unconditional award of appellate attorney's fees because to do so could penalize a party for taking a meritorious appeal. *Werley v. Cannon*, 344 S.W.3d 527, 536 (Tex. App.—El Paso 2011, no pet.). The award to Ruth is predicated upon Richard's

15

This court previously has held that post-judgment interest on appellate attorney's fees does not accrue until the appellate court issues its final judgment. *Apache Corp. v. Dynegy Midstream Servs., Ltd. P'ship*, 214 S.W.3d 554, 566–67 (Tex. App.—Houston [14th Dist.] 2006), *rev'd in part on other grounds*, 294 S.W.3d 164 (Tex. 2009); *Protechnics Int'l, Inc. v. Tru-Tag Sys., Inc.*, 843 S.W.2d 734, 736 (Tex. App.—Houston [14th Dist.] 1992, no writ).[4] We have explained that, because an award of appellate attorney's fees depends on the outcome of the appeal, it is not a final award until the appeal is concluded and the appellate court issues its final judgment. *Apache Corp.*, 214 S.W.3d at 566–67; *Protechnics Int'l, Inc.*, 843 S.W.2d at 736.

We therefore partially sustain Richard's fourth issue and modify that portion of the trial court's judgment to clarify that the interest on appellate attorney's fees does not begin until the appellate court's judgment is final.

## 5. Transfer to Harris County

In his fifth issue, Richard contends the trial court erred in ordering the case to be transferred to Harris County on its own motion and in the absence of any pleadings requesting this relief. Richard requests that this court modify the judgment to delete that portion of the trial court's order. In response, Ruth again argues that Richard has failed to preserve this issue, but concedes, subject to her

---

*unsuccessful* appeal and, therefore, is conditioned upon her success. We need not further modify the judgment. *Cf. Ansell Healthcare Prods., Inc. v. United Med.*, 355 S.W.3d 736, 745 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

[4] Ruth notes that other appellate courts have concluded that post-judgment interest on appellate attorney's fees should begin accruing when the appeal is perfected or when proceedings begin in the supreme court. *See, e.g.*, *Moore v. Bank Midwest, N.A.*, 39 S.W.3d 395, 404 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 250 (Tex. App.—San Antonio 1998, pet. denied); *Sw. Bell Tel. Co. v. Vollmer*, 805 S.W.2d 825, 834 (Tex. App.—Corpus Christi 1991, writ denied), *overruled on other grounds by Hous. Lighting & Power Co. v. Auchan USA, Inc.*, 995 S.W.2d 668 (Tex. 1999). However, we decline to reconsider our earlier precedent.

waiver argument, that the trial court may have exceeded its authority in ordering the transfer.

In his reply, Richard argues in a cursory manner that he is challenging the legal sufficiency of the evidence and therefore he was not required to preserve the issue below. *See* Tex. R. App. P. 33.1(d). But he does not explain why he believes this issue to be one of evidentiary sufficiency rather than an issue of law, nor does he cite any authority so holding. We decline Richard's invitation to characterize this issue as one of legally insufficient evidence.

Richard also argues that the court's action constitutes fundamental error that may be raised for the first time on appeal. In support of this contention, Richard cites generally to Family Code chapter 155 and *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982) (per curiam).

Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) (citing *In re B.L.D.*, 113 S.W.3d 340, 350–52 (Tex. 2003)). Fundamental error exists in those instances in which error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of Texas, or instances in which the record affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter. *Id.*; *Pirtle*, 629 S.W.2d at 920. The Supreme Court of Texas has explained that, in the context of civil appeals, fundamental error is a limited doctrine used only in rare instances. *In re B.L.D.*, 113 S.W.3d at 350–51 (declining to review unpreserved jury-charge error in parental-rights termination case as fundamental error).

Here, Richard argues that the trial court's transfer on its own motion constituted fundamental error "because it violates the legislative scheme regarding continuing, exclusive jurisdiction and the procedures for transferring venue of

cases within the state." Richard does not argue that the trial court making the transfer lacked jurisdiction or the capacity to act as a court, nor does he argue that that the trial court's action adversely affects the public interest generally. Further, the record demonstrates the trial court had jurisdiction over the parties and the subject matter. *See* Tex. Fam. Code § 155.001; *see also Alexander v. Russell*, 699 S.W.2d 209, 210 (Tex. 1985) (per curiam) (holding that court rendering original divorce decree and establishing original conservatorship for minor children remained the court of continuing and exclusive jurisdiction despite an attempted transfer that failed to comply with the Texas Family Code). Moreover, the alleged error affects only the rights of the particular litigants in this case, and does not adversely affect the interests of the public generally. *See Newman v. King*, 433 S.W.2d 420, 422 (Tex. 1968) (holding that failure to appoint a guardian ad litem for a minor affects only the rights of the minor and the litigants in the case, not the public generally). Therefore, we decline to apply the fundamental-error doctrine to this issue. *See In re B.L.D.*, 113 S.W.3d at 350–51; *Mack Trucks*, *Inc.*, 206 S.W.3d at 577. Because Richard failed to properly preserve the alleged error in the trial court, we overrule his fifth issue.[5]

---

[5] We express no opinion as to the effectiveness of the attempted transfer in this case.

### *Conclusion*

We overrule Richard's first, second, third, and fifth issues, but sustain in part Richard's fourth issue. Accordingly, we modify the trial court's judgment to clarify that post-judgment interest on appellate attorney's fees begins to accrue when the appellate court issues a final judgment. We affirm the judgment as modified.


/s/          Martha Hill Jamison
                        Justice


Panel consists of Chief Justice Hedges and Justices Jamison and Busby.