**Affirmed and Opinion filed March 12, 2013.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-12-00277-CV

_____

**PATRICE MCBRIDE, Appellant**

**V.**

**ALBERT MCBRIDE, Appellee**

**On Appeal from the 308th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2002-39130**

## O P I N I O N

This appeal involves competing motions for enforcement and contempt orders entered against both appellant, Patrice McBride, and appellee, Albert McBride, for violating several provisions of their divorce decree. Albert was held in contempt for failing to pay certain child support commitments; Patrice was held in contempt for violating certain provisions of the parties' standard possession order. Patrice contends that the trial court erred by failing to (1) consider her

claims regarding missed child support payments before Texas acquired jurisdiction over this case; (2) include these amounts in its judgment for unpaid child support in the contempt order against Albert; (3) include amounts to reimburse her for child care in this judgment; and (4) award attorney's fees as part of its contempt order against Albert. We affirm the trial court's contempt order against Albert.

## BACKGROUND

Patrice and Albert married on October 20, 1998. They signed an agreed dissolution of their marriage in Connecticut on December 22, 2000. According to the dissolution, Albert was required to pay $122.88 per week in child support for their minor child. Child care expenses were to be split between Albert and Patrice, with Patrice paying 61.4% and Albert paying 38.6% of the expenses. Patrice was required to maintain insurance for the child, and the parties agreed to split any of the child's medical expenses that were not covered by Patrice's insurance. After the parties moved to Texas, the dissolution agreement was registered here in June 2002.

In February 2004, Albert filed a petition to modify the parent-child relationship, seeking a reduction in his child support payments. On February 16, 2004, the 308th District Court of Harris County heard the case that resulted in the suit affecting the parent-child relationship order (the "SAPCR order") from which these contempt proceedings arise. As is relevant to this appeal, in this SAPCR order, the court named both Patrice and Albert joint managing conservators of their child. Patrice was given the exclusive right to establish the primary residence of their child with no geographical limitation. The SAPCR order contained a standard possession order with provisions for parents residing less than 100 miles apart and parents residing more than 100 miles apart.

2

Albert was ordered to pay Patrice child support of $532.48 per month, with the first payment due on March 1, 2004. Albert was ordered to make these payments through the Texas Child Support Disbursement Unit in San Antonio, Texas. He was additionally ordered to pay 38.6% of the child's daycare expenses, but the SAPCR order states "[I]t is the sole responsibility of Patrice McBride to provide true and correct copies of monthly day care invoices to Albert McBride, either by certified mail, return receipt requested, or by facsimile transmission, on the fifth day of each month. . . ." The order also provided that the parties were to evenly divide all reasonable and necessary uninsured medical, dental, eye care, orthodontic, prescription, and other health care expenses.

The SAPCR order contained the following requisite notices:

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

The required notice was to be given to the other party by registered or certified mail, return receipt requested. Further emphasized warnings in the order included the provisions that failure to pay child support does not justify denying court-ordered possession of or access to a child, and refusal to allow possess of or access to a child does not justify failure to pay court-ordered child support. The SAPCR order was signed on April 29, 2004, and stated, "all relief requested in this case and not expressly granted is denied."

On August 15, 2007, Albert filed a motion for enforcement of the SAPCR order, in which he asserted that he had been denied access to and possession of their child on ten occasions from August 6, 2004 to July 8, 2005.[1] He further alleged he had been denied telephone access to the child on nine occasions from March 5, 2007 to June 8, 2007. He claimed that Patrice had failed and refused to provide him with her current residential address and phone number or work address and phone number, also in violation of the order. He alleged that she had relocated on at least two occasions since the entry of the order and had failed to provide him with her new contact information. Albert requested that Patrice be held in contempt for each past and any future violations of the SAPCR order and that she be fined and confined in the county jail, among other things. He further

---

[1] At the hearing on this motion, discussed *infra*, Albert withdrew the last two of these alleged denials of visitation.

4

asked for additional periods of possession of their child to compensate him for those periods denied him by Patrice. Finally, he requested that Patrice be ordered to pay his reasonable attorney's fees, expenses, and costs should a judgment be rendered in his favor. Shortly after filing his motion for enforcement, Albert filed a petition to modify the parent-child relationship, alleging a material and substantial change and seeking a reduction in his child support obligation.

Patrice filed a general denial to Albert's modification in September 2007. In March 2008, she filed a motion for enforcement of child support order. She sought child support arrearages of $41,594.16; reimbursement of daycare expenses of $14,723.00; and reimbursement of medical expenses of $1,495.00. For each of these violations of the SAPCR order, she sought to have Albert held in contempt, fined, and confined to the county jail, among other things. Patrice also filed a cross-motion to modify the parent-child relationship. In this motion, she sought an increase in child support and an order that Albert pay the cost of their child's health insurance. She further requested permission to apply for a passport for their child and permission to travel outside the United States with their child.

The trial court heard all the motions to modify and for contempt with the agreement of the parties in late July 2011. At this hearing, Albert testified that, shortly after the SAPCR order was entered, Patrice took their child and returned to Connecticut without notifying him. He testified that Patrice denied him visitation under the SAPCR orders on numerous occasions during the time period from August 2004 to April 2005. He explained that, while he had their child for summer visitation in 2005, Patrice moved to Atlanta, Georgia. According to Albert, Patrice refused to disclose her residential address in Atlanta. Albert also testified that Patrice refused to disclose where their child attended school. He stated that he was unable to see his child for "about two-and-a-half years" after that visit. Albert

explained that he discovered Patrice's address through conducting a search of tax records and ascertained where the child attended school based on her address. Albert testified on cross-examination that since 2008, the visitation issues have been resolved.

Albert admitted that he stopped paying child support in 2004 when Patrice left for Connecticut. He testified that he made support payments from the date of his divorce in December 2000 until 2003.[2] Albert stated that he had not received any out-of-pocket medical expense information from Patrice from the period between 2004 and 2008. He further testified that the only information he received regarding child care was a "spreadsheet of day care that [Patrice] made" and that he never received a "receipt from a day care."

Patrice's counsel attempted to cross examine Albert regarding child support predating the SAPCR order. Albert's counsel objected on the ground of "res judicata," asserting that this issue had already been litigated in the trial resulting in this order. The trial court sustained Albert's objection to this line of questioning.[3]

Albert's current wife, Melanie, testified as well. She corroborated much of Albert's testimony regarding Albert's inability to exercise his visitation rights from August 2004 to April 2005. She further attested to the difficulty she and Albert had experienced in locating Patrice, and their efforts to find Albert's and Patrice's child when Patrice relocated to Atlanta and refused to provide Albert with her address and contact information. Melanie testified that Albert did not want to

---

[2] Without objection, a document from the Harris County District Clerk, entitled "Harris County Child Support Payment History Results," was admitted into evidence. This document reflects that Albert made a payment of $488.90 on March 31, 2003, as well as numerous other payments in various amounts on various other dates up to July 1, 2011.

[3] Patrice's counsel later made an offer of proof regarding pre-2004 child support obligations that she alleged Albert had made. This offer of proof is discussed in detail later in the analysis section of this opinion.

provide for his child from 2004 to 2008 when he did not know where the child was because he "described it to [her] as a relapse of losing his child that he lost to murder." She explained that Albert and Patrice had had another child who had been murdered at the age of about eighteen months and that, when Albert was unable to locate his child, he felt the same loss as he had felt when he lost his other child to murder.

Patrice testified that she communicated regularly with Albert regarding her contact information and that she sent him various letters with her address. She acknowledged that she never provided the court with any change in address in writing. She denied refusing to inform Albert where their child was enrolled in school. She testified that she did not send any day-care expense receipts or medical-expense receipts to Albert because Albert "didn't want" them from her. Anytime that she knew Albert wanted to see their child, she permitted him to see their child: "Any time that I was aware that he was in Connecticut to visit [our child], I allowed him to see [our child]." She testified that whenever she attempted to discuss moving to Atlanta with their child, Albert became upset, hung up the phone, and changed his phone number. However, she acknowledged that she never provided her address in Atlanta to him.

Patrice testified regarding the day care expenses she incurred for their child. A spreadsheet she had created was admitted into evidence summarizing the daycare expenses she had incurred and had sent to Albert. She requested that Albert reimburse her for his portion of these day care expenses, which totaled $16,725.38. Patrice testified about the out-of-pocket medical expenses she paid for their child; a listing of these expenses was admitted into evidence. Patrice explained that, according to the SAPCR order, she and Albert were to split those

expenses "50/50." She requested $2,623.00 in reimbursement from Albert for his portion of these expenses.

Both attorneys testified regarding their fees, rested, and closed. Albert's attorney moved for a directed verdict regarding Patrice's attorney's fees due to her counsel's lack of testimony regarding the reasonableness of his fees, which the trial court took under advisement.

On October 19, 2011, the trial court signed contempt orders finding both Patrice and Albert in contempt. The trial court specifically found that Patrice had violated the SAPCR order by denying Albert visitation on August 6, 2004 and September 3, 2004. Patrice was held in criminal contempt for each of these violations, assessed punishment of confinement for fifteen days for each separate violation to run concurrently in the Harris County Jail. The commitment was suspended, and she was placed on community supervision for a period of 120 months. She was ordered to pay attorney's fees and costs of $3,010.00 to Albert. Albert was ordered to pay Patrice $750.00 in attorney's fees that had previously been assessed against him as part of this contempt order.

In its order holding Albert in contempt, the trial court found that Albert specifically failed to pay Patrice child support on five separate occasions. The court further found Albert in arrears in the amount of $35,888.25 for the period from February 16, 2004 through July 31, 2011. Finally, the court found that Albert had failed to pay his portion of the uninsured health care reimbursement as additional child support and ordered him to pay Patrice $2,623.00. For each of the five specific contempt findings, the trial court found Albert in criminal contempt and ordered his punishment assessed at confinement in the Harris County jail for 120 days for each separate violation, to run concurrently. Albert was also held in civil contempt and ordered confined in the county jail until he paid the $35,888.25

8

assessed as arrearages. Both his commitments were suspended, and he was placed on community supervision for 120 months. Albert was ordered to pay an additional $600.00 per month through the state disbursement unit to pay his arrearages, in addition to his current child support under the SAPCR order. He was further ordered to pay $2,623.00 in medical expenses by December 1, 2011. Patrice was not awarded any attorney's fees or costs in this order. Patrice filed a motion for new trial, in which, as is relevant here, she asserted that the trial court abused its discretion by failing to include child support payments from the Connecticut order of December 12, 2000 and failing to award Patrice attorney's fees as the prevailing party in her motion for enforcement of child support order. The motion was denied, and this appeal timely ensued.[4]

## ANALYSIS

In four issues, Patrice challenges the trial court's contempt order entered against Albert on her motion to enforce child support. A trial court's decision to grant or deny the relief requested in a motion for enforcement is reviewed for an abuse of discretion. *Chenault v. Banks*, 296 S.W.3d 186, 189 (Tex. App.— Houston [14th Dist.] 2009, no pet.).

### A.    The Child Support Arrearages Award

In her first issue, Patrice asserts that the trial court erroneously granted Albert's assertion of res judicata regarding the child support ordered by the Connecticut court before Texas obtained jurisdiction over this case. In her second issue, she contends that the trial court failed to include in its arrearages award

---

[4] The trial court also signed a modification order on October 19, 2011, which is not subject to any issues in this appeal. In the modification order, the parties were ordered to bear their own attorney's fees and costs.

9

amounts ordered by the Connecticut court before Texas acquired jurisdiction over this case. We discuss these related issues together.

Fundamentally, these complaints concern the trial court's decision to exclude evidence, which we review for an abuse of discretion. *See Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). As discussed above, the trial court sustained Albert's objection to Patrice's attempt to offer evidence concerning any child support arrearages prior to 2004.

Regardless of the validity of this ruling, the trial court permitted Patrice to make an offer of proof regarding the alleged arrearages from the contested period of time. *See* Tex. R. Evid. 103(a)(2) (requiring a party complaining of the exclusion of evidence to make the substance of the evidence known to the trial court). An offer of proof will not preserve error adequately unless the record shows the nature of the evidence with sufficient specificity to allow the reviewing court to determine whether the trial court erred in excluding it. *See Watts v. Oliver*, —S.W.3d—, No. 14-11-00637-CV, 2013 WL 266050, at *3 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, no pet. h.) (citing *In re N.R.C.*, 94 S.W.3d 799, 806 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)).

A copy of a payment record attached to a motion for enforcement is evidence of the facts asserted in the payment record and is admissible to show whether payments were made. *See* Tex. Fam. Code § 157.162(c). But the offer of proof Patrice made at trial is not the payment record she attached to her motion for enforcement. Instead, the offer of proof included in the reporter's record consists of a spreadsheet entitled "Delinquent Child Support Report Record" dated "7/25/2011." Albert is listed as the "Obligor," and Patrice is listed as the "Obligee." Only pages five through nine of this document are included in the

record; pages one through four are missing. The first date on the document is listed as "07/05/02," and includes an "unconfirmed obligation" of "9,953.28," and a "balances interest" of "511.36." The final date listed on the document is "09/01/08," with an "unconfirmed obligation" of "19,230.00," and a "balances interest" of "1,673.02."[5]

This incomplete document is not adequate to allow us to determine whether the trial court erred in excluding Patrice's evidence. *See Watts*, 2013 WL 266050 at *3 (concluding that offer of proof was insufficient to preserve issue for appeal because it was not specific enough); *cf. In re K.R.*, No. 05-06-00885-CV, 2007 WL 2081453, at *3 (Tex. App.—Dallas July 23, 2007, pet. denied) (mem. op.) ("We find nothing in [Family Code section 157.162(c)] to suggest that a 'payment record,' as that term is used in the statute, includes a document like the present one, with unexplained interest rates, terms, and calculations."). Accordingly, we conclude that Patrice did not preserve error on these issues, and we overrule them.

## B. Day Care Expenses

In her third issue, Patrice asserts that the trial court erred by failing to include in its judgment for unpaid child support the amount to reimburse her for child care expenses ordered as additional child support. As discussed above, however, the SAPCR order expressly states that Patrice is required to provide copies of monthly day care invoices to Albert by the fifth of each month. Patrice admittedly did not provide these invoices to Albert. Rather, at the contempt hearing, she provided a summary spreadsheet listing the dates of the child's attendance, the tuition Patrice allegedly paid, and the 38.6% Albert allegedly owed. Because Patrice failed to comply with the terms of the SAPCR order, we cannot

---

[5] This exhibit is attached to Patrice's appellate brief. As attached, it is missing page seven as well as pages one through four.

say that the trial court abused its discretion by not including this amount in its judgment of arrearages. We overrule Patrice's third issue.

## C. Attorney's Fees

In Patrice's fourth issue, she argues that the trial court erred by not awarding her attorney's fees as part of its order after finding Albert in contempt for failing to pay child support. We begin our analysis of Patrice's complaint by noting that this hearing was not held simply on Patrice's enforcement motion against Albert. Rather, as noted above, it was a combined hearing on several motions: Patrice's enforcement motion, Albert's enforcement motion, and both Patrice's and Albert's motions to modify.[6] The attorney's fees were incurred by the parties' prosecuting and defending all of these motions. Thus, the determination of the proper amount of attorney's fees was not a simple matter for the trial court.

Texas Family Code section 157.167 requires the court to order the respondent to pay, in addition to the arrearages, the movant's *reasonable* attorney's fees and costs if the court finds the respondent has failed to make child support payments. Tex. Fam. Code § 157.167(a).[7] The party seeking to recover attorney's fees has the burden of proof. *In re A.L.S.*, 338 S.W.3d 59, 69 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). The question of the reasonableness of attorney's fees is a fact question, which must be supported by competent evidence. *In re A.M.K.*, No. 14-03-01308-CV, 2005 WL 3005636, at *4 (Tex. App.—Houston [14th Dist.] Nov. 10, 2005, pet. denied) (mem. op.).

---

[6] Chapter 106 of the Texas Family Code authorizes an award of reasonable attorney's fees and expenses in a modification proceeding. *See* Tex. Fam. Code § 106.002.

[7] This section also requires the court to order the respondent, in addition to other remedies, to pay the movant's reasonable attorney's fees and costs if the respondent has failed to comply with the terms of an order providing for the possession of or access to a child. *Id.* § 157.167(b). In this case, both Patrice and Albert were successful movants on their individual motions to enforce.

Albert's counsel testified first regarding his fees. He explained his background and experience and stated that he is familiar with the customary rates for attorneys in the Harris County area. He testified that his contract with Albert provides for a $200 per hour fee. He stated that his representation of Albert was both reasonable and necessary, as were the fees he charged in this case. He stated his total costs were $1,510. He testified that he had spent 37.35 hours on this case since 2006, which did not include mediation and trial time. According to Albert's counsel, mediation and trial time added approximately an additional seven and a half hours to his total time. Although he testified on cross-examination that twelve hours of his total time had been spent on this case before it had been dismissed for want of prosecution and re-filed, his testimony could support an award of up to $10,480.00 in attorney's fees and costs. In the contempt order entered against Patrice, the trial court ordered Albert to pay Patrice's counsel $750.00 in attorney's fees he had previously been ordered to pay and ordered Patrice to pay Albert's counsel $3,010.00 as attorney's fees, expenses, and costs.

Patrice's attorney later provided the following testimony regarding his fees. He stated that his usual rate is $275.00 per hour. He provided an invoice as an exhibit of the time he had spent prosecuting the motion for enforcement of child support, defending the motion for enforcement of possession, and prosecuting the motion to modify, which was admitted into evidence. The total amount billed on this invoice, including fees and costs, was $7,526.25.[8] He requested that an additional six hours of time for trial and mediation at his hourly rate be added to his invoice for an award of fees and costs. Thus, his request for attorney's fees and costs totaled $9,176.25. After this testimony, he rested and closed. As noted *supra*, Albert's counsel then moved for a directed verdict on attorney's fees and

---

[8] This amount included the $750.00 in fees that had previously been assessed against Albert, described above and awarded to Patrice in the contempt order entered against her.

13

costs, asserting that Patrice's counsel had failed to establish that his fees were reasonable. The trial court took the matter under advisement and later entered a contempt order against Albert in which no attorney's fees, expenses, or costs were awarded to Patrice or her counsel.

Under the unique circumstances of this case, we cannot say that the trial court abused its discretion in making the attorney's fees and costs awards it did. First, in the modification order, not subject to this appeal but made part of our record, the parties are ordered to bear their own attorney's fees and costs. Second, Albert's counsel was awarded only a fraction of the attorney's fees and costs for which he provided competent evidentiary support. *See Arthur Andersen & Co. v. Perry Equip. Corp*, 945 S.W.2d 812, 818 (Tex. 1997) (setting forth non-exclusive list of factors courts should consider when determining reasonableness of attorney's fees); *A.M.K.*, 2005 WL 3005636, at *4. Finally, Patrice's counsel provided no evidence that his fees and costs were reasonable. *See Arthur Andersen & Co.*, 945 S.W.2d at 818; *cf. A.L.S.*, 338 S.W.3d at 69–70 (holding trial court did not abuse its discretion in failing to award attorney's fees after finding respondent failed to make child support payments because movant presented no evidence of any *reasonable* fees incurred). Accordingly, we overrule Patrice's fourth and final issue.

## CONCLUSION

After thoroughly reviewing the entire record of this case, including all three orders resulting from the single hearing, we have overruled Patrice's four issues

14

challenging the contempt order entered against Albert. Accordingly, we affirm the trial court's order.

/s/    Adele Hedges
Chief Justice

Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.