**Opinion issued February 14, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-01120-CV

———————————

## CARLOS A. PUNTARELLI, Appellant

## V.

## SUSAN K. PETERSON, Appellee

---

**On Appeal from the 247th District Court**
**Harris County, Texas**
**Trial Court Case No. 2006-55712**

---

## O P I N I O N

This is a divorce case. Appellant Carlos A. Puntarelli argues that (1) the trial court deprived him of his constitutional right to a jury trial on the issue of

division of the parties' marital estate, and (2) there is insufficient evidence to support various aspects of the trial court's property division. We affirm.

## BACKGROUND

Puntarelli filed an Original Petition for Divorce on September 1, 2006, asserting that the parties were common-law married and seeking, among other things, division of the marital property. Appellee Susan Peterson denied they were married. On June 30, 2009, that issue was tried to a jury, which found that the parties were married on June 9, 2000.

On June 9, 2010, Puntarelli filed a request for a jury trial. After the parties reached an agreement as to custody and visitation issues, the remaining property division issues were tried to the bench over the course of five nonconsecutive days between April and September of 2011. On October 4, 2011, the court entered a final decree of divorce. After Puntarelli's motion for new trial was denied, he timely appealed.

## ISSUES ON APPEAL

Puntarelli brings the following three issues on appeal:

(1)   "Is the District Court's division of the parties' estate—and, more specifically, its $200,000.00 offset of the parties' homestead—supported by factually sufficient evidence?"

(2)   "Did the District Court unconstitutionally deny Appellant a right to a trial by jury on the issues surrounding the division of the parties' marital estate?"

(3)  "Is the District Court's $160,000.00 'waste' judgment against Appellant supported by legally and factually sufficient evidence?"

## RIGHT TO JURY TRIAL

In Puntarelli's second issue, he argues that the "District Court denied his constitutional right to a trial by jury on the property division issues." Because he timely requested a jury trial and paid the required jury fee, Puntarelli contends the trial court erred in deciding the property division issues and requests that we reverse and remand for a new trial.

In response, Peterson argues that Puntarelli waived his jury request by proceeding to trial without a jury without objecting. TEX. R. APP. P. 33.1(a) (complaint on appeal must be first presented to the trial court). Alternatively, Peterson contends that any error was harmless because the division of marital property is within the trial court's discretion, not the jury's. TEX. FAM. CODE ANN. §§ 7.001–.002 (Vernon 2006); *see also Bagby v. Bagby*, 186 S.W.2d 702, 706 (Tex. Civ. App.—Amarillo 1945, no writ) (jury's findings regarding property division are merely advisory).

While Puntarelli did file a request for a jury trial and paid the requisite jury fee, nothing in the record indicates that he objected to the trial court's conducting a bench trial. We agree with Peterson that Puntarelli's proceeding to a bench trial without objection waived any complaint. *See In re D.R.*, 177 S.W.3d 574, 580 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("In order to preserve a trial

3

court's error in conducting a bench trial despite a party's perfected right to a jury trial, the party must timely object to the trial court's action or affirmatively indicate that it intends to exercise its right to a jury trial."); *In re K.M.H.*, 181 S.W.3d 1, 16 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (on reh'g) ("[E]ven if there was a proper jury request, [appellant] waived any error because he failed to object when the trial court proceeded with a bench trial.").

We overrule Puntarelli's second issue.

## SUFFICIENCY OF THE EVIDENCE

In Puntarelli's first issue, he challenges the factual sufficiency of the evidence to support the district court's finding that the parties' homestead was encumbered by a $200,000 loan. In his third issue, he challenges the legal and factual sufficiency of the district court's finding that he wasted community assets.

### A. Standards of Review

In a bench trial in which no findings of fact or conclusions of law are requested by the parties or filed by the trial court, we imply all findings of fact necessary to support the judgment. *See, e.g.*, *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (citing *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984)). These findings of fact have the same weight as a jury's verdict. *Amador v. Berrospe*, 961 S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, pet. denied). When challenged, findings of fact are not conclusive if, as here, there

4

is a complete reporter's record. *Id.* When there is a reporter's record, the trial court's findings are binding only if supported by the evidence. *Id.* We review the sufficiency of the evidence supporting the findings by applying the same standards that we use in reviewing the legal or factual sufficiency of the evidence supporting jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. *Id.* at 822. The trier of fact is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Id.* at 819. Although we consider the evidence in the light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.* at 822.

In reviewing a factual sufficiency point, we consider all the evidence supporting and contradicting the finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the verdict only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and

unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In a bench trial, the trial court, as fact-finder, is the sole judge of the credibility of the witnesses. *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

**B. Trial Court's Finding that a $200,000 Loan Encumbered Homestead**

There was conflicting evidence at trial about the source of the $200,000 down payment for the Fall 2000 purchase of the parties' marital homestead located on Longleaf Lane. Peterson testified that she borrowed $200,000 from her ex-husband, J. Murtha, for the down payment. Specifically, she testified that on September 22, 2000, Murtha wrote her two checks—one for $25,000 and one for $175,000. Her September 22, 2000 bank statement reflects that $200,000 was deposited on September 22, 2000. She testified to an agreement with Murtha to pay him 8% interest on the loan. She made some payments, but as of April 1, 2011, the balance owed to Murtha, including accrued interest, was $342,149.

Peterson testified that the down payment on the Longleaf property consisted of a $10,000 check to the title company for the earnest money deposit, and a $190,000 payment at closing. As documentary evidence, a copy of the $10,000 check to Stewart Title and Peterson's bank statement reflecting a transfer of $190,000 on October 11, 2000 was admitted. Peterson testified that—while

6

Puntarelli spend money renovating the Longleaf property—he did not contribute to the down payment on the home.

Murtha's testimony was consistent with Peterson's. He testified that he loaned Peterson $200,000 at 8% interest to use as a down payment on the Longleaf Lane residence. His bank statements were entered into evidence reflecting checks in the amounts of $25,000 and $175,000 cleared his bank on September 22, 2000, and he testified that these were the payments to Peterson. A loan scheduled prepared by Murtha was also entered into evidence reflecting that, as of April 1, 2011, the balance was $342,149.00. Murtha testified that he made the loan because he and Peterson remained friends after their divorce, they work together professionally sometimes, and the interest rate on the loan offered him a good return.

In contrast Puntarelli, testified that he paid the down payment on the Longleaf property from proceeds from the sale of his house in Scotland. He estimated that he spent "somewhere around" $280,000 in separate funds on the purchase of the property. He testified that he did not have copies of the checks or any other documentary evidence of his funds being transferred to the title company. He was also unable to recall the amount of the down payment.

The Final Decree of Divorce awarded the Longleaf property to Peterson, and assigned to her the debt associated with the property, i.e., the first mortgage and the note payable to Murtha.

### 1. Parties' Arguments

Puntarelli argues that the district court "erred by predicating its division of the parties' marital estate on an erroneous valuation of the parties' community estate." Specifically, he complains that the district court should not have accepted Peterson's net valuation in the inventory she filed of the Longleaf property of -$40,581.45, because that alleged value erroneously took into account the $200,000 indebteness to Murtha. Puntarelli asserts that "no reasonable factfinder could have believed Mr. Murtha's testimony about the existence of the loan to [Peterson], making the District Court's ultimate valuation (based on that testimony) manifestly wrong." Moreover, Puntarelli argues, reversal is necessary because this $200,000 discrepancy had more than just a *de minimis* effect on the District Court's ultimate property division. *Graves v. Tomlinson*, 329 S.W.3d 128, 154 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (holding that "failing to consider $134,000 in dividing the community estate has more than a *de minimis* effect on the trial court's just and right division . . . requiring reversal and remand of the entire community estate to the trial court for a just and right division of the properly characterized community property").

8

In response, Peterson argues that "considering all of the evidence presented at trial and the inferences that may be drawn from it, factually and legally sufficient evidence" of the $200,000 loan exists. Thus, Peterson asserts, there was no error in the trial court's property division, which should be affirmed.

## 2. Applicable Law

In a divorce decree, the trial court "shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party." TEX. FAM. CODE ANN. § 7.001 (Vernon 2006). The court has considerable discretion in this regard. *Wallace v. Wallace*, 623 S.W.2d 723, 726 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ dism'd) (citing *Murff v. Murff*, 615 S.W.2d 696 (Tex. 1981)). To disturb the trial court's division of property, the appellant must demonstrate that the trial court clearly abused its discretion by a division or an order that is manifestly unjust and unfair. *Sharma v. Routh*, 302 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Under this abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error; they are relevant factors in assessing whether the trial court abused its discretion. *Id.*

We must remand the entire community estate for a new division when we find reversible error that materially affects the trial court's just and right division of the property because only the trial court may make a just division of community

9

property. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex. 1985); *McElwee v. McElwee*, 911 S.W.2d 182, 189 (Tex. App.—Houston [1st Dist.] 1995, writ denied). The appellate court determines only whether the trial court abused its discretion in making the division. *McElwee*, 911 S.W.2d at 189.

### 3. Application

Incorrectly factoring in debt encumbering real property can result in an erroneous valuation that "would presumably impact the trial court's determination of a just and equitable division of the community estate." *Knight v. Knight*, 301 S.W.3d 723, 733 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We hold, however, that there is sufficient evidence of the $200,000 loan to support the trial court's recognition of the loan in making an equitable division of the community estate.

Both Peterson and Murtha testified to the existence, terms, and details of the loan, as well as introduced some documentary evidence—by way of bank statements and check copies—to support their testimony. In contrast, Puntarelli testified that he provided the down payment on the Longleaf property. This is exactly the type of factual dispute that is within the province of the trial court to resolve. *E.g., Bush v. Bush*, 336 S.W.2d 722, 730 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("In a bench trial, the trial court is the sole judge of the credibility of the witnesses, assigns the weight to be given their testimony, may accept or reject

10

all or any part of their testimony, and resolves any conflicts or inconsistencies in the testimony.").

Puntarelli maintained the position at trial that the proceeds from the sale of his house in Scotland funded the down payment on the Longleaf property. The trial court heard Peterson's testimony acknowledging that Puntarelli contributed some to repairs to the home, but that he did not provide the down payment. The trial court could have disbelieved Puntarelli's testimony completely. Or the trial court could have reconciled the parties' testimony by recognizing the validity of the loan from Murtha to Peterson for the down payment while also accepting that Puntarelli contributed funds from the sale of his Scotland house on the Longleaf property's renovations—just not on the down payment. Viewing all the evidence, we cannot conclude that the "evidence is so weak as to make [the trial court's recognition of the Murtha loan] clearly wrong and manifestly unjust." *Id*. (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

We overrule Puntarelli's first issue.

### C. $160,000 Waste Award

Peterson sought a $196,000 judgment against Puntarelli for wasting community assets. She testified that between 2006 and 2011—during the pendency of the divorce proceedings—Puntarelli "had significant income and didn't contribute to any of the [community] properties or any of the things, and yet

11

there is no money and no retirement." The trial court's awarded her a waste judgment, in the final divorce decree, of $160,000.

### 1. Parties' Arguments

Puntarelli challenges the trial court's waste judgment, arguing that evidence that a portion of his salary was "missing" during the marriage was not enough to make out a *prima facie* case of constructive fraud. According to Puntarelli, "a showing that community property *actually was* transferred" is required before the burden shifts to the transferring spouse to demonstrate fairness. Because, Puntarelli asserts, Peterson presented no more than "a mere suspicion that there may have been a transfer out of the community estate," there is legally and factually insufficient evidence to support the trial court's waste judgment.

In response, Peterson contends that an actual transfer of community property for non-community purpose need not always be shown to make out a *prima facie* case of waste; rather, it only requires a showing that one spouse breached its fiduciary duty to the other by unfairly disposing of community assets. According to Peterson, evidence that Puntarelli squandered his income and was unable to account for it at trial is sufficient to support the trial court's judgment.

### 2. Applicable Law

"A fiduciary duty exists between a husband and a wife as to the community property controlled by each spouse." *Zieba v. Martin*, 928 S.W.2d 782, 789 (Tex.

12

App.—Houston [14th Dist.] 1996, no pet.) (on reh'g). A presumption of "constructive fraud," i.e., waste, arises when one spouse disposes of the other spouse's interest in community property without the other's knowledge or consent. *See Mazique v. Mazique*, 742 S.W.2d 805, 808 (Tex. App.—Houston [1st Dist.] 1987, no writ); *Jackson v. Smith*, 703 S.W.2d 791, 795 (Tex. App.—Dallas 1985, no writ). No "dishonesty of purpose of intent to deceive" must be established; such proof of subjective intent is "only required for actual fraud on the community, as opposed to constructive fraud on the community." *Everitt v. Everitt*, No. 01-11-00031-CV, 2012 WL 3776343, at *5 (Tex. App.—Houston [1st Dist.] Aug. 31, 2012, no pet.) (citing *Schlueter v. Schlueter*, 975 S.W.2d 584, 589–90 (Tex. 1998)).

Once the presumption arises, the burden of proof then shifts to the disposing spouse to prove the fairness of the disposition of the other spouse's one-half community ownership. *Mazique*, 742 S.W.2d at 808; *Jackson*, 703 S.W.2d at 795. "The three primary factors for determining the fairness of the dispositions are: (1) the size of the property disposed of in relation to the total size of the community estate; (2) the adequacy of the estate remaining to support the other spouse after the disposition; and (3) the relationship of the parties involved in the transaction or, in the case of a gift, of the donor to the donee." *Everitt*, 2012 WL 3776343, at *3

13

(citing *Massey v Massey*, 807 S.W.2d 391, 402 (Tex. App.—Houston [1st Dist.] 1991), *writ denied* 867 S.W.2d 766 (Tex. 1993)).

A claim for the improper depletion of the community estate may be resolved by the trial court with an unequal division of the community estate, or a money judgment in order to achieve an equitable division of the estate. *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998).

### 3. Application

The record reflects that on November 1, 2006, one day after Peterson was served with Puntarelli's petition for divorce, the trial court held an ex parte hearing and signed temporary orders requested by Puntarelli. Among other things, those temporary orders financially obligated Peterson to maintain all of the parties' properties and expenses, except those related to the townhome on Boheme Street where Puntarelli lived. These orders remained in place until the 2011 trial. Over that five year period, Peterson lived with a negative cash flow covering the mortgages, property taxes, repairs and other expenses on the parties' real estate and assets.[1] She accomplished this by liquidating investment accounts, borrowing money from family and friends, and utilizing credit cards for household expenses.

---

[1] Peterson's gross income from work was approximately $250,000 during this period; she also received child support under the temporary orders, as well as rental income on certain real properties and a social security check for her oldest child.

Over the five-year period, after taking into account rent received on various properties, her expenses exceeded income by about $600,000.

Aside from paying child support provided for under the temporary orders, Puntarelli did not contribute financially to the parties' real estate or other assets or expenses over that five-year period other than paying the mortgage and expenses related to the Boheme townhouse, the expenses related to his vehicles, and certain expenses related to an airplane gifted to Peterson by her father that was in Puntarelli's possession.

Puntarelli testified that he consistently made between $200,000 and $250,000 per year after 2000, and specifically that his income in 2010 was between $192,000 and $204,000. He experienced a dip in income in 2008, but did not specify the amount.

Bank statements for a one year period were introduced for a Chase bank account (that was disclosed on Puntarelli's sworn inventory) reflecting $146,080 in transfers from another Chase account (that was *not* disclosed on Puntarelli's sworn inventory). Puntarelli acknowledged that the undisclosed account is the one his paycheck is directly deposited into. When asked at trial why the undisclosed account was not listed on his sworn inventory and why he did not produce the bank statements for that account, he responded "I don't know." He estimated the current balance to be about $10,000 in that undisclosed account.

Puntarelli testified to having about $2,000 excess net income each month and testified to liquidating his retirement accounts during the time the parties were separated. He could not account for that excess money at trial, however.[2]

Peterson testified that she calculated the amount of her waste claim, i.e., $196,000, with reference to Puntarelli's own testimony about his income and expenses. Specifically, she looked to his stated income of about $230,000 per year, and subtracted his mortgage and taxes on the Boheme townhouse, as well as his expenses for his cars and general living expenses. She contends that "the total amount of funds unaccounted for, by way of Puntarelli's own testimony, at trial was $325,080," rendering the "$160,000 in waste determined by the Court . . . well within its discretion."

Puntarelli does not challenge the amount of the waste judgment on appeal. Nor does Puntarelli argue that he established at trial that his disposition of community assets was fair. Rather, he argues only that—as a matter of law— without proof of an actual transfer of community funds by him, there cannot be legally or factually insufficient evidence of waste. We disagree.

While waste claims often are premised on specific transfers or gifts of community property to a third party, a waste judgment can be sustained by

---

[2] Although Puntarelli offered little information about his spending during that period, he did testify to using both advances on his credit card and some liquidated retirement funds to pay his attorneys' fees. He also testified to taking trips more than once with a girlfriend, but offered no specifics about the cost of these trips.

16

evidence of community funds unaccounted for by the spouse in control of those funds.  For example, in *Murff v. Murff*, the supreme court held that the trial court did not abuse its discretion in awarding wife a money judgment, given there was evidence that "husband had substantial sums in savings before the separation that had disappeared by the time of trial."  615 S.W.2d at  699.  Similarly, in *Massey v. Massey,* we affirmed a jury's finding of constructive fraud on the community, holding that the finding was supported by evidence of significant depletion of community cash by appellant that appellee had no information about, and by evidence that the appellant "failed to account for significant sums of money paid to the community or borrowed against the community's assets."  807 S.W.2d at 402–03.

Other courts of appeals have likewise affirmed waste judgments that were not based on disputes over a specific gift of community assets, but instead based in whole or in part on the failure of the dissipating party to account for community funds in that party's control.  *Zieba*, 928 S.W.2d at 789–90 (holding trial court erred in failing to find, as a matter of law, that husband breached fiduciary duty by "not properly accounting for the withdrawal of community funds, wasting community funds or spending community funds without [wife's] knowledge or consent" during the pendency of the divorce proceedings); *Reaney v. Reaney*, 505 S.W.2d 338, 340 (Tex. App.—Dallas 1974, no writ) (affirming disproportionate

17

community division and money judgment in wife's favor where husband claimed to have spent $53,000 in community funds in the six months shortly before trial and "utterly failed to make any showing that the loss and dissipation of these community funds was not an abuse of his managerial powers" when the "burden was on him to do so.").

The trial evidence that Puntarelli failed to disclose at least one bank account containing community funds into which his income was deposited, along with his failure to account for or explain the depletion of the community funds in his control over the five-year pendency of the divorce proceedings spent without Peterson's consent was sufficient to shift the burden to Puntarelli to establish the fairness of his use of these community funds. He did not attempt to meet this burden.

Because we have rejected Puntarelli's argument that Peterson needed to identify specific transfers of community property (rather than indentifying unaccounted-for community funds in Puntarelli's sole control) to shift the burden to Puntarelli to show the fairness of his use of those funds in his control, and because Puntarelli does not otherwise challenge the trial court's waste judgment or argue that he established his depletion of community assets was fair to Peterson, we hold that the trial court's waste judgment was within its discretion.

We overrule Puntarelli's third issue.

18

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.