**Opinion issued December 19, 2013**



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-12-01072-CV

---

**EMELDA AKUKORO, Appellant**

**V.**

**KERRY AKUKORO, Appellee**

---

**On Appeal from the 245th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-62330**

---

## MEMORANDUM OPINION

Emelda Akukoro appeals the trial court's final decree of divorce. She challenges (1) the trial court's grant of Kerry Akukoro's claims for equitable reimbursement, (2) the trial court's failure to offset those claims with her own

claims for reimbursement, (3) the trial court's failure to file findings of fact and conclusions of law, and (4) the trial court's grant of Kerry's motion for nunc pro tunc judgment. We affirm.

## Background

*Pre-trial events*

In October 2011, Kerry filed for divorce from Emelda. The trial court entered a temporary restraining order and an order setting a hearing for temporary orders. Among other things, the temporary restraining order prohibited both parties from "[s]elling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of Petitioner or Respondent, whether personalty or realty, and whether separate or community, except as specifically authorized by this order," and "[m]aking withdrawals from any checking or savings account in any financial institution for any purpose, except as specifically authorized by this order." It provided that each party was authorized "[t]o make expenditures and incur indebtedness for reasonable and necessary living expenses for food, clothing, shelter, transportation, and medical care," "[t]o make expenditures and incur indebtedness for reasonable attorney's fees and expenses in connection with this suit," [t]o make withdrawals from accounts in financial institutions only for the purposes authorized by this order," and "[t]o engage in acts

2

reasonable and necessary to conduct [their] usual business and occupation." In November 2011, Emelda answered and filed a counter-petition for divorce.

On December 19, 2011, the trial court signed partial agreed temporary orders. The orders appointed Kerry and Emelda Temporary Joint Managing Conservators of their four children, and provided that Emelda would have the exclusive right to designate the primary residence of the children. Emelda was also awarded exclusive and private use and possession of the couple's house while the divorce case was pending. The orders directed Kerry to pay Emelda monthly child support. The orders also provided that Kerry and Emelda would each receive 50% of any income from an investment business they co-owned, Genuine Export, Inc., and made various provisions regarding the operation of a co-owned home health business, Blessed Home Health Services, Inc. ("Blessed Home"). The orders contained the same prohibitions as the temporary restraining order regarding disposing of property and making withdrawals from accounts.

After entry of the temporary orders, the parties entered into three agreements. The Mediated Settlement Agreement encompassed all issues related to the care of the children.[1] The parties' first Rule 11 agreement provided that

---

[1] This Mediated Settlement Agreement is not in the record.

Kerry would pay Emelda $125,000 for her ownership interest in Blessed Home.[2] On July 23, 2012, the parties entered into a second Rule 11 agreement, in which they agreed that (1) all real estate and the amounts in all bank accounts would be divided 50/50, (2) each person would keep the vehicles that were held in their own name, and (3) each person would keep the personal property in their possession. This agreement specified the amounts in each bank account, and noted that a Bank of America account ending in 1710 held in Emelda's name contained $61,126 and a Wells Fargo Account ending in 8513 held in Emelda's name contained $20,572. It also specified that these accounts had contained $107,466.06 and $59,681.14, respectively, in November 2011, subsequent to the trial court's entry of the temporary restraining order. The agreement also specified that the trial would be limited to proving up the divorce and to the "equitable reimbursement claims of both parties."

### Trial

Trial was held in October 2012. At trial, Kerry contended that his separate estate had three bases for reimbursement. First, Kerry introduced evidence that, on November 4, 2011, after the trial court had entered its temporary restraining order,

---

[2] This Rule 11 agreement is not in the record; however, the parties agree that both parties complied with its terms and there is no challenge to this agreement on appeal.

the 1710 account contained $107,466.06 in community funds. As of February 6, 2012, the 1710 account contained only $61,126. Second, Kerry introduced evidence that, on November 30, 2011, the 8513 account contained $59,681.14 in community funds. As of January 31, 2012, the 8513 account contained only $20,572. Kerry contended that Emelda had wasted the difference—a total of $85,449.20—because she could not show the withdrawals were for reasonable and necessary living expenses. Kerry requested that he receive reimbursement of half of the amount that Emelda withdrew from the 1710 account, $23,170, and half of the amount that Emelda withdrew from the 8513 account, $19,470.

Third, Kerry testified that he had paid $2,000 per month from January 2012 to October 2012 towards the mortgage on the couple's house, which included approximately $1,215 towards the monthly payment plus approximately $785 towards principal to catch up the arrearages in the account based on an agreement with the bank. Kerry requested that he be reimbursed one half of the total amount he paid towards the mortgage, $10,000.

Kerry's claims for reimbursement totaled $52,640. Kerry requested that the trial court award him 100% of the interest in the house and 100% of his retirement account, instead of the 50% of each of these as allocated in the July 23, 2012 Rule 11 agreement, in order to make this reimbursement. The parties had

5

agreed in their second Rule 11 agreement that their equity in the home totaled $56,000, and therefore Emelda's 50% interest was worth roughly $28,000. The after-tax value of 50% of Kerry's retirement account was approximately $25,000. Accordingly, these two items combined totaled approximately $53,000.

Emelda testified that she received $8,000 to $10,000 per month in each of November and December 2011 and January and February 2012 from Blessed Home, and then received a lump sum of $125,000 when she sold her interest in the business. She also testified that she received $2,000 per month in child support from Kerry. She agreed that Kerry paid all of the expenses associated with their house.

Regarding her expenses, Emelda testified that she spent no more than $4,000 on family expenses per month. She testified that although she was awarded sole possession of the couple's house during the pendency of the case, she moved in January 2012 to another location, where she prepaid $14,000 for a year's worth of rent. She also testified that she incurred $49,669 in legal expenses related to the divorce prior to the date of trial.

Emelda testified that she understood the withdrawal and spending prohibitions in the temporary orders, but that she had used the $85,449.20 withdrawn from the 1710 and 8513 accounts between October 2011 and February

6

2012 for her "business and family expenses." She testified that she used approximately $46,000 that she withdrew from the 1710 account to buy a new business and approximately $40,000 that she withdrew from the 8513 account for "family expenses."

Emelda also testified that, although she agreed in the July 23, 2012 Rule 11 agreement to split the $61,126 in the 1710 account and the $20,572 contained in the 8513 account equally with Kerry, she withdrew and spent that money. She testified that at the time she entered into the agreement, she had already withdrawn and spent the $61,126 in the 1710 account on her legal, business, and family expenses. She testified that she purchased another business for $200,000 after selling her interest in Blessed Home, using the $125,000 she received from the sale of her interest in Blessed Home plus an additional $75,000.

Emelda testified that she had claims to offset Kerry's claims for reimbursement. Specifically, Emelda testified that she gave Kerry money so that he could buy a car, and he promised to pay her back that money. Kerry objected to this testimony as not relevant, and the trial court sustained the objection.

The trial court entered written findings on October 8, 2012. It found that Emelda "spent, transferred, or otherwise removed" the $61,126 contained in the 1710 account and the $20,572 contained in the 8513 account that she had agreed in

7

the July 23, 2012 Rule 11 agreement to split with Kerry 50/50, and that $40,849 of these amounts were Kerry's funds. The trial court also found that Kerry expended $20,000 toward the payment of loans arising from the mortgage on the couple's house, and that Kerry's equitable reimbursement claim for $10,000 based on these payments should be granted. The trial court concluded that Emelda should be awarded the 1710 and 8513 accounts, and Kerry should be awarded 100% of the interest in the couple's house and 100% of his retirement plan. It signed a final decree of divorce on October 31, 2012.

## *Post-trial events*

On November 6, 2012, Emelda filed a request for findings of fact and conclusions of law pursuant to Rule 296 of the Texas Rules of Civil Procedure. The trial court annotated the request on December 3, 2012, indicating that the request had been called to the court's attention on November 28, 2012. The trial court did not enter additional findings or conclusions based upon the request. On December 5, 2012, Emelda filed a notice of past due findings of fact and conclusions of law.

On November 30, 2012, Kerry filed a "Motion for Judgment Nunc Pro Tunc and Request for Hearing to Enter." Kerry requested a judgment nunc pro tunc because "[t]he judgment signed by the court contains a clerical error; specifically,

8

it failed to accurately and consistently reflects [sic] the previously filed Mediated Settlement agreement terms related to health insurance for said children." The October 31, 2012 decree required that Kerry pay for health insurance for the children. The trial court granted the motion and signed a nunc pro tunc final decree of divorce on January 16, 2013, which required that Emelda pay for health insurance for the children.

## Discussion

Emelda contends the trial court abused its discretion in concluding that she wasted community assets and that Kerry was entitled to reimbursement. She also contends that the trial court abused its discretion in sustaining Kerry's objection to Emelda's testimony regarding her claims of offset. Further, she contends that the judgment must be reversed because the trial court did not file findings of fact and conclusions of law after she filed a timely request. Finally, she contends that the trial court erred in granting Kerry's motion for a nunc pro tunc judgment, because the error in the judgment was a judicial error and not a clerical error. We address these contentions in turn.

## A. Did the trial court err in concluding Kerry was entitled to equitable reimbursement?

In her first issue, Emelda contends the trial court abused its discretion in concluding that she wasted community assets and that Kerry was entitled to equitable reimbursement.

### 1. Standard of Review and Applicable Law

We review a trial court's division of marital property for an abuse of discretion. *Barras v. Barras*, 396 S.W.3d 154, 164 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). The trial court has broad discretion when dividing the marital estate at divorce. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). "To disturb a trial court's division of property, a party must show that the court clearly abused its discretion by a division or an order that is manifestly unjust or unfair." *Barras*, 396 S.W.3d at 164. A trial court does not abuse its discretion if there is some evidence of a substantive and probative nature to support the decision. *Id.* A trial court abuses its discretion if it acted unreasonably or arbitrarily, or without reference to any guiding rules or principles. *Id.*

Reimbursement is an equitable right that arises when the funds or assets of one estate are used to benefit and enhance another estate without itself receiving some benefit. *Id.* at 173. In a claim for reimbursement, the trial court shall determine the rights of the parties and apply equitable principles to determine

whether to recognize the claim after considering the parties' relative circumstances and, in appropriate circumstances, order a division of the claim in a just and right manner. TEX. FAM. CODE ANN. § 7.007 (West Supp. 2013); *Barras*, 396 S.W.3d at 173. Because a trial court resolves claims for reimbursement under equitable principles, claims for reimbursement may be offset against each other where appropriate. TEX. FAM. CODE ANN. § 3.402(b) (West Supp. 2013); *Barras*, 396 S.W.3d at 173. The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures were made and that they are reimbursable. *Barras*, 396 S.W.3d at 173–74. "A trial court's discretion in evaluating a claim for reimbursement is equally as broad as that discretion exercised by a trial court in making a just and right division of the community estate." *Id.* at 174 (citing *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988)).

The trial court may also consider whether a party wasted community assets in determining a just and right division and whether a party is entitled to reimbursement. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998). "A fiduciary duty exists between a husband and a wife as to the community property controlled by each spouse." *Zieba v. Martin*, 928 S.W.2d 782, 789 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (op. on reh'g). "A presumption of 'constructive fraud,' i.e., waste, arises when one spouse disposes of the other spouse's interest in

11

community property without the other's knowledge or consent." *Puntarelli v. Peterson*, 405 S.W.3d 131, 138–39 (Tex. App.—Houston [1st Dist.] 2013, no pet.). No dishonesty of purpose or intent to deceive must be established, because proof of subjective intent is required only to show actual fraud on the community, not constructive fraud on the community. *Id.* at 139. Once the presumption arises, the burden of proof shifts to the disposing spouse to prove the fairness of the disposition of the other spouse's one-half community ownership. *Id.*

## 2. Analysis

Emelda contends that the trial court erred in awarding Kerry an equitable reimbursement for three reasons. First, Emelda contends she did not waste community assets, because she spent the money in accounts 1710 and 8513 on living expenses, business expenses, and attorney's fees. Second, Emelda contends that to prove waste, Kerry was required to prove the heightened culpability standard of actual fraud, which he failed to do. Finally, Emelda contends the trial court erred in calculating the equitable reimbursement and awarded Kerry more than he was entitled to receive.

### a. Did the trial court err in determining that Emelda "spent, transferred, or otherwise removed" $40,849 of Kerry's funds from the 1710 and 8513 accounts?

At trial, Emelda admitted that, although she had agreed in the July 23, 2012 Rule 11 agreement to split the $61,126 in the 1710 account and the $20,572 in the 8513 account with Kerry 50/50, she instead withdrew and spent this money. The trial court found that Emelda "spent, transferred, or otherwise removed" these amounts, and that $40,849 of these amounts were Kerry's funds. Emelda contends that this was not waste of community assets, because she spent the money on family expenses, business expenses, and attorney's fees. However, regardless of her reasons for withdrawing these funds, Emelda agreed in the Rule 11 agreement that Kerry would receive $40,849 from the funds in the 1710 and 8513 accounts. But the record demonstrates that Emelda spent most, if not all, of this money before she even entered into the Rule 11 agreement with Kerry and represented to him that he would receive this money. Accordingly, we hold that the trial court did not err in finding that Kerry was entitled to an equitable reimbursement of $40,849. *See Barras*, 396 S.W.3d at 173–74 (emphasizing trial court's broad discretion in dividing community estate); *Puntarelli*, 405 S.W.3d at 138–39 (presumption of waste arises when one spouse disposes of the other spouse's interest in community property without the other's knowledge or consent).

13

### b. Was Kerry required to prove the heightened culpability standard of actual fraud in order to receive an equitable reimbursement with respect to funds in the 1710 and 8513 accounts?

Emelda contends that, in order to recover on his reimbursement claims related to withdrawal of funds from the 1710 and 8513 accounts, Kerry was required to prove the heightened culpability standard of actual fraud. We disagree. "A presumption of 'constructive fraud,' i.e., waste, arises when one spouse disposes of the other spouse's interest in community property without the other's knowledge or consent." *Puntarelli*, 405 S.W.3d at 138–39. Here, there is no dispute that Emelda spent the $61,126 in the 1710 account and the $20,572 in the 8513 account, and yet, agreed in writing that Kerry should receive 50% of each of these amounts. Further, it is undisputed that Kerry had no knowledge that Emelda had disposed of these funds. In fact, the record reflects that Kerry did not learn that these funds had been withdrawn from the accounts until Emelda admitted this at trial. Because a presumption of waste arose based on the evidence that Emelda had disposed of the $40,849 without Kerry's knowledge, Kerry was not required to establish that Emelda had dishonesty of purpose or intent to deceive in disposing of these funds. *Id.* at 139. Accordingly, we reject Emelda's contention that Kerry was required to prove actual fraud in order to recover on his equitable reimbursement claims regarding the 1710 and 8513 accounts. *See id.* at 138–39.

14

### c. Did the trial court err in its calculation of Kerry's equitable reimbursement claim?

Emelda contends that the trial court erred in awarding Kerry 100% of the interest in the couple's house. The second Rule 11 agreement reflects that the parties agreed that each would be awarded a 50% interest in the house. At trial, when Kerry requested that the trial court award him 100% of the interest in the house in order to give effect to his reimbursement request, Emelda did not object on the basis of any purported miscalculation, nor did she argue that the Rule 11 agreement was unenforceable. Accordingly, Emelda has not preserved for our review her contention that the trial court erred by miscalculating the value of Kerry's reimbursement claim or the value of the couple's equity in the house. *See* TEX. R. APP. P. 33.1(a) (prerequisite for presenting complaint on appeal is a record showing complaint was timely made to trial court and ruling obtained).

We conclude that the trial court did not err in entering judgment for Kerry on his equitable reimbursement claims. Accordingly, we overrule Emelda's first issue.

## B. Did the trial court err in excluding Emelda's offset evidence?

In her second issue, Emelda contends that the trial court abused its discretion in sustaining Kerry's objection to her testimony regarding her claims for offset.

15

## 1. Standard of Review and Applicable Law

We review the trial court's decision to exclude evidence for an abuse of discretion. *McBride v. McBride*, 396 S.W.3d 724, 730 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). To preserve error concerning the exclusion of evidence, the complaining party must actually offer the evidence and secure an adverse ruling from the court. *Sink v. Sink*, 364 S.W.3d 340, 347 (Tex. App.—Dallas 2012, no pet.) (citing *Fletcher v. Minn. Min. & Mfg. Co.*, 57 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)). While the reviewing court may sometimes be able to discern from the record the general nature of the evidence and the propriety of the trial court's ruling, it cannot, without an offer of proof, determine whether exclusion of the evidence was harmful. *Id.* Thus, when evidence is excluded by the trial court, the proponent of the evidence must preserve the evidence in the record in order to complain of the exclusion on appeal. *See Fletcher*, 57 S.W.3d at 606; *see also* TEX. R. EVID. 103(a), (b). If the party fails to make an offer of proof, it must introduce the excluded testimony into the record by a formal bill of exception. *See Southwest Country Enters., Inc. v. Lucky Lady Oil Co.*, 991 S.W.2d 490, 494–95 (Tex. App.—Fort Worth 1999, pet. denied). Failure to demonstrate the substance of the excluded evidence through an

offer of proof or bill of exception results in waiver of any error in its exclusion. *See id.* at 494.

### 2. Analysis

Emelda contends that she has several bases for offset, including claims regarding two cars and a claim regarding a bank account, and that the trial court abused its discretion in excluding her testimony regarding these claims. The following exchange occurred at trial:

Emelda's attorney: Did you ever give your husband money to buy a car?

Emelda: Yes.

Emelda's attorney: And he promised to replace that.

Emelda: Yes.

Emelda's attorney: Can you tell the Court approximately how much.

Kerry's attorney: Let me object to time on this and relevancy, Your Honor.

The Court: Time frame, sir?

Emelda's attorney: That was in 2011?

Emelda: Yes.

The Court: Prior to the Rule 11 Agreement?

Emelda's attorney: Yes, Judge.

The Court: Sustain the objection.

This is the entirety of the testimony in the record related to Emelda's claims for offset. Emelda did not make an offer of proof or bill of exception regarding the evidence she intended to introduce. Accordingly, we hold that she did not preserve this complaint for review. *See Sink*, 364 S.W.3d at 347; *Fletcher*, 57 S.W.3d at 606; *Southwest Country Enters.*, 991 S.W.2d at 494.

We overrule Emelda's second issue.

## C. Was Emelda harmed by the trial court's failure to file findings of fact and conclusions of law in response to her request?

In her third issue, Emelda contends the trial court erred in failing to file findings of fact and conclusions of law after she filed a timely request.

### 1. Standard of Review and Applicable Law

Under Texas Rule of Civil Procedure 296, when a party makes a proper and timely request for findings of fact and conclusions of law and the trial court fails to comply, harm is presumed unless the record affirmatively shows that the requesting party was not harmed by their absence. TEX. R. CIV. P. 296; *Watts v. Oliver*, 396 S.W.3d 124, 130 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam)). Findings of fact and conclusions of law must be requested within 20 days after judgment, and if no findings and conclusions are filed, the requesting party must file a notice of past due findings within 30 days of its original request. *See* TEX. R. CIV. P. 296,

297.  If the record shows that the failure to file findings of fact and conclusions of law did not prevent the appellant from properly presenting their case to the appellate court, error is not harmful. *See Watts*, 396 S.W.3d at 130 (citing *Tenery*, 932 S.W.2d at 30); *Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 665 (Tex. App.— Houston [14th Dist.] 2011, no pet.).

### 2. Analysis

The trial court entered written findings following trial.  After the final judgment was signed, Emelda timely requested findings of fact and conclusions of law pursuant to Rule 296.  *See* TEX. R. CIV. P. 296.  She also timely filed a notice of past due findings.  *See* TEX. R. CIV. P. 297.  However, the record shows that the failure to file findings of fact and conclusions of law in response to her request did not prevent Emelda from properly presenting her case on appeal, and therefore any error is not harmful.[3]  *See Watts*, 396 S.W.3d at 130–31 (where party was able to challenge grounds for adverse award, there was no harm in trial court's failure to

---

[3]  Emelda contends that harm should be presumed for three reasons: (1) the trial court found for Kerry on his reimbursement claim; (2) the trial court did not consider her claims for offset, "nor provide[] any explanation as to why it didn't take them into account in the property division;" and (3) the appellate court should not consider "findings recited in the judgment."  But none of these is persuasive. First, the mere fact that Kerry prevailed on his reimbursement claim does not demonstrate harm.  Next, with respect to Emelda's offset claim, the trial court excluded Emelda's evidence, as discussed in issue two, above, and therefore, there was no evidence to support it.  Finally, Emelda's claim that we cannot rely on the findings filed by the trial court is without merit, because the trial court properly recited them in a document other than the final judgment.

file findings of fact and conclusions of law); *see also Rumscheidt*, 362 S.W.3d at 665–66. The trial court entered written findings on the salient issues on October 26, and there is no missing finding that prevented Emelda from presenting her appeal to this Court. Accordingly, we conclude that Emelda was not harmed by the trial court's failure to file findings of fact and conclusions of law in response to her request. *See Tenery*, 932 S.W.2d at 30; *Watts*, 396 S.W.3d at 130–31.

We overrule Emelda's third issue.

## D. Did the trial court err in correcting the judgment?

In her fourth issue, Emelda contends that the trial court erred in granting Kerry's motion for a nunc pro tunc judgment, because the error in the judgment was a judicial error and not a clerical error. We do not need to determine whether the error sought to be corrected was clerical or judicial, because Kerry's motion was filed within 30 days of the signing of the final judgment and sought to correct the judgment.

### 1. Applicable Law

The trial court retains plenary power over a case for a minimum of thirty days after signing a final judgment. TEX. R. CIV. P. 329b(d); *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000). The plenary power of the court can be extended by timely filing, within 30 days of the judgment, an

appropriate postjudgment motion, such as a motion for new trial or a motion to modify, correct, or reform the judgment. *See* TEX. R. CIV. P. 329b(a), (e), (g); *Lane Bank*, 10 S.W.3d at 310. If such a motion is filed and not determined within 75 days of the date of the judgment, the motion is overruled by operation of law. TEX. R. CIV. P. 329b(c). However, in such a case, the trial court may still grant a new trial, vacate, modify, correct, or reform the judgment until 30 days after the expiration of the 75 day period. *See* TEX. R. CIV. P. 329b(e), (g).

## 2. Analysis

In his "Motion for Judgment Nunc Pro Tunc and Request for Hearing to Enter," Kerry averred that the final decree of divorce signed by the trial court on October 31, 2012 incorrectly incorporated the terms of the parties' MSA with respect to their children's health insurance. Emelda does not contend that the October 31 decree correctly reflected the terms of the parties' MSA, nor does she contend that the MSA was not enforceable; instead, she contends that, because the final decree was initially drafted by Kerry's attorney, the error was judicial, rather than clerical, and could not be corrected by a judgment nunc pro tunc.

Although Kerry's motion was presented as a request for a nunc pro tunc judgment pursuant to Rule 316, in considering whether a motion operates to extend the trial court's plenary power under Rule 329b, the substance of the motion, not

its title, determines the relief sought.[4]  *See Surgitek v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999); *see also* TEX. R. CIV. P.  71.   Here, it is undisputed that Kerry's motion asked the trial court to correct the judgment.  The motion was filed on November 30, 2012, within 30 days after the October 31, 2012 final judgment.  *See* TEX. R. CIV. P. 329b(a), (g).  The motion was not determined by January 14, 2013, the 75th day after judgment, and accordingly, the trial court retained plenary power to correct the judgment until the 105th day after judgment, February 13, 2013.  TEX. R. CIV. P. 329b(c), (e), (g).   The trial court granted Kerry's motion and corrected the judgment on January 16, 2013, before the trial court's plenary power had expired.  *See* TEX. R. CIV. P. 329b(e), (g).

We overrule Emelda's fourth issue.

### Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

---

[4]   We note that Rule 329b distinguishes between Rule 316 and Rule 329b motions because Rule 316 motions may be filed after the trial court's plenary power has expired.