**AFFIRMED and Opinion Filed July 7, 2022**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00787-CV

### IN THE INTEREST OF M.H.A, AND Z.H.A., CHILDREN

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-53533-2018**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Goldstein
Opinion by Justice Partida-Kipness

In this divorce case, appellant Husband challenges a disproportionate division of the marital estate in favor of Wife based on the finding that Husband committed constructive fraud. He also disputes the trial court's finding that he used his company as his alter ego and the award of certain financial assets to Wife without evidence of their valuation. We affirm the judgment in all respects.

## BACKGROUND

Husband and Wife were married in 1997. In 2018, Husband filed for divorce. He did not serve Wife with the petition, though, and he took a default judgment of divorce against her that named him as sole managing conservator of their children and awarded him nearly all the family property. Wife discovered Husband's

maneuver and had the divorce decree set aside through a bill of review in 2020. She counterpetitioned for divorce and sought a finding that Husband had committed actual and constructive fraud on the marital estate through a series of dubious financial transactions.

At trial, much of the evidence focused on Husband's withdrawals of community funds and transfers of money, real property, and other community assets to himself or his family members. Husband maintained that Wife knew about and approved the withdrawals and transfers, many of which he testified were made for legitimate family reasons. Other transfers, Husband explained, were made in connection with his home-renovation business, Renaissance Rebuilding, LLC. Wife denied that she had any foreknowledge of the transfers, testifying that she generally left Husband in charge of the family's finances. She disputed Husband's explanations for the transfers and stated her belief that Husband was hiding assets. Wife also introduced evidence that showed Husband had received distributions from an undisclosed IRA account, though Husband continued to deny that he had any such account.

After hearing the evidence, the trial court granted a divorce. The resulting decree gave Wife a disproportionate share of the property division based in part on Husband's constructive fraud against the marital estate. Within the division, the trial court awarded Wife all individual retirement accounts, pensions, annuities, and annuity life insurance benefits in Husband's name. The trial court rendered findings

of fact and conclusions of law. Among them was a determination that Husband used Renaissance as his alter ego and, as a result, a piece of real property belonging to Renaissance could and should be awarded to Wife. Husband appeals.

## STANDARD OF REVIEW

We review the trial court's division of a community estate for an abuse of discretion. *Slicker v. Slicker*, 464 S.W.3d 850, 857 (Tex. App.—Dallas 2015, no pet.). In family law cases, the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review. *Id.* As such, legal and factual sufficiency are not independent grounds of reversible error but instead constitute factors relevant to our assessment of whether the trial court abused its discretion. *Id.* A trial court does not abuse its discretion for want of evidence if there is some evidence of a substantive and probative character to support the decision. *Id.*

In an appeal from a bench trial, we review a trial court's conclusions of law de novo and will uphold them on appeal if the judgment of divorce can be sustained on any legal theory supported by the evidence. *Reisler v. Reisler*, 439 S.W.3d 615, 619 (Tex. App.—Dallas 2014, no pet). We review the trial court's findings of fact under the same standards for sufficiency that govern the review of jury findings, giving deference to the trial court's determination of the weight and credibility of the evidence. *Id.* at 620. In evaluating a legal sufficiency challenge, we credit evidence that supports the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. *Id.*

A party seeking to disregard corporate formalities bears the burden of proving that the company is an alter ego of another person or entity. *Fuentes v. Zaragoza*, 555 S.W.3d 141, 169 (Tex. App.—Houston [1st Dist.] 2018, no pet.). We review conclusions of law regarding alter ego de novo to determine their correctness as applied to the facts. *Id.* We review the evidence underlying findings of fact for legal and factual sufficiency under the same standards applied in reviewing evidence supporting a jury's findings. *Id.* We sustain a no-evidence challenge when the record reveals either (1) a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence, or (4) the evidence establishes conclusively the opposite of a vital fact. *Id.*

## ANALYSIS

### I. Constructive Fraud

In his first issue, Husband disputes the trial court's decision to award Wife a disproportionate share of the community estate based on its determination that Husband committed constructive fraud. Husband contends that Wife introduced no evidence of the kind that may sustain a constructive fraud finding.

In a divorce decree, the trial court shall order a division of the marital estate in a manner that the trial court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE § 7.001. The trial court is afforded broad discretion

–4–

in dividing the community estate, and we must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.). The property division need not be equal, and a trial court may consider many factors when exercising its discretion, *id.*, including waste or fraud on the community. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998).

Fraud on the community can be actual or constructive. *Strong v. Strong*, 350 S.W.3d 759, 771 (Tex. App.—Dallas 2011, pet. denied). Constructive fraud may be shown if one spouse unfairly deprives the other spouse of the benefit of community property. *Id.* "A presumption of constructive fraud arises where one spouse disposes of the other spouse's interest in community property without the other spouse's knowledge or consent." *Id.* If the presumption arises, the burden of proof then shifts to the spouse who made the transfers to prove the fairness of the disposition. *Chatterjee v. Banerjea*, No. 05-18-01035-CV, 2019 WL 3886655, at *5 (Tex. App.—Dallas Aug. 19, 2019, no pet.) (mem. op.). While waste claims are often premised on specific transfers or gifts of community property to a third party, a waste judgment can also be sustained by evidence of community funds unaccounted for by the spouse in control of those funds. *Wheeling v. Wheeling*, 546 S.W.3d 216, 225 (Tex. App.—El Paso 2017, no pet.).

According to Wife, Husband alone had managed the family finances, and when the couple encountered difficulties in their relationship, he acted swiftly to

shut off Wife's access to family accounts and hide assets from her. Wife submitted evidence that Husband had transferred over $300,000 of community funds to himself or his relatives between 2017 and 2019. In all, she documented seven sizeable transfers ranging from $12,300 to $102,406.03 over that period, along with other smaller transfers. Wife denied that she had known of or consented to any of these transfers. She conceded that much of the money came from her joint accounts with Husband, but she maintained that she did not discover her name was on these joint accounts until the divorce proceedings began. There was also evidence that Husband had power of attorney for Wife, which he exploited in secreting the funds.

Husband testified that Wife knew about and agreed to the transfers. He also attempted to justify the transfers, explaining them as innocuous family expenses. For instance, he testified that one of the transfers was used to renovate and furnish an apartment for Wife and the children, while another was used to support his father in Jordan. Two other transfers, he testified, were used to fund a family vacation and Husband's side business of renovating houses, both of which Wife knew of and benefited from. More generally, Husband maintained that he was not a wasteful person and that, at any rate, the family had too little money to permit wasteful use of community funds.

However, the trial court expressly found that Husband's testimony was not credible. Furthermore, Wife claimed to be unaware of the transfers and disputed Husband's explanations, and the trial court found her testimony to be credible. It

–6–

was the trial court's sole right to assess the parties' credibility, and we defer to these determinations on appeal.

Because there was credible proof Husband had disposed of over $300,000 in community property without Wife's knowledge or consent, the evidence warranted a presumption that Husband had committed constructive fraud. Husband offered no credible evidence to rebut that presumption. The state of the evidence thus fully supports the trial court's determination that Husband constructively defrauded the community estate. *See In re D.V.D.*, No. 05-17-00268-CV, 2018 WL 2316014, at *7 (Tex. App.—Dallas May 22, 2018, no pet.) (mem. op.) (upholding a trial court's ruling on constructive fraud claim as a credibility determination in the face of conflicting evidence); *Strong*, 350 S.W.3d at 771 (same).

Husband, however, would require more. He contends that to sustain a finding of constructive fraud, there must also be evidence of fraudulent intent. As support, he relies on our sister court's framing of the issue when it wrote, "[w]aste occurs when one spouse, *dishonestly or purposefully with the intent to deceive*, deprives the community estate of assets to the detriment of the other spouse." *Giesler v. Giesler*, No. 03-08-00734-CV, 2010 WL 2330362, at *3 (Tex. App.—Austin June 10, 2010, no pet.) (mem. op.) (emphasis added).

This argument is inconsistent with our precedent. "Constructive fraud does not require a showing of fraudulent intent . . . ." *Strong*, 350 S.W.3d at 771; *accord*

*Puntarelli v. Peterson*, 405 S.W.3d 131, 138 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Husband offers no reason to revisit *Strong*, and we decline to do so.

Husband has not shown that the trial court abused its discretion in finding constructive fraud. Accordingly, we overrule Father's first issue.

## II.    Alter Ego

In his second and third issues, Husband challenges the trial court's determination that he used his company, Renaissance, as his alter ego. Based on this determination, the trial court disregarded the company's corporate form and awarded real property belonging to the company to Wife. Husband maintains that this was error.

Under certain circumstances, a spouse may be able to reach the assets of the other spouse's separately owned corporation. *Young v. Young*, 168 S.W.3d 276, 281 (Tex. App.—Dallas 2005, no pet.). A finding of alter ego allows piercing of the corporate veil. *Id.* Piercing the corporate veil, in turn, allows the trial court to characterize as community property assets that would otherwise be the separate property of a spouse. *Id.*

In a divorce case, a finding of alter ego requires (1) unity between the separate property corporation and the spouse such that the separateness has ceased to exist, and (2) the spouse's improper use of the corporation damaged the community estate beyond that which might be remedied by a claim for reimbursement. *Id.* at 281–82. The trial court must find something more than mere dominance of the corporation

by the spouse. *Lifshutz v. Lifshutz*, 61 S.W.3d 511, 517 (Tex. App.—San Antonio 2001, pet. denied).

In this case, the trial court made several factual findings that corresponded with its ultimate alter ego determination. The trial court found that there was extensive commingling of personal and company funds. According to the findings, Husband was the sole member and owner of Renaissance, and he treated Renaissance's accounts as his personal accounts. He used company funds on personal expenditures and financial transfers to family members, but he was unable to provide any documentation to explain the company's finances or justify its expenses or transfers. Based on these facts, the trial court determined that Husband used Renaissance as his alter ego.

The record supports these findings. Renaissance's bank statements show that company money was regularly spent on personal purchases such as movies, groceries, and liquor. The same statements showed that Husband often made four-figure transfers to his brother in Jordan from company accounts, and it was undisputed that those transfers had nothing to do with Renaissance's business of renovating houses. The statements show that around the time Husband filed for divorce, he withdrew over $100,000 in community funds from the company's account, but he was unable to produce any credible evidence to explain where that money had gone. The withdrawal left the company undercapitalized with just under $19,000 in reserves available along with some property assets. The evidence

reflected that Renaissance was a profitable enterprise in the years before the divorce, but at the time of the divorce, Husband claimed that the business was defunct due to lack of funding.

In *Young*, we upheld an alter ego finding in a divorce case based on comparable proof. *See* 168 S.W.3d at 283. We emphasized the husband's commingling of assets, his unexplained personal expenditures with company funds, and that his actions left "a substantial amount of money unaccounted for." *Id.*; *see Boyo v. Boyo*, 196 S.W.3d 409, 421 (Tex. App.—Beaumont 2006, no pet.) (upholding alter ego finding in a divorce case based on evidence of sole control, commingling of assets, personal expenses paid with company funds, and "questionable transfers" of community funds to family and friends through the company). Much like here, the record in *Young* also contained evidence that the husband earned several hundred thousand dollars through the business in the years before the divorce, but at the time of the divorce, the husband claimed that he was not working and that the company had no income. 168 S.W.3d at 283.

This case calls for the same result as in *Young*. Viewing the evidence in the light most favorable to Wife, we cannot hold that the evidence is legally insufficient to support the trial court's alter ego finding. *See id.* Accordingly, we overrule Husband's second and third issues.

## III. Award of Retirement Accounts without Valuation Evidence

In his fourth issue, Husband contends that the trial court abused its discretion by awarding Wife the full value of all retirement accounts, pensions, annuities, and annuity life insurance benefits that were in Husband's name. Husband asserts that there was no evidence as to the value of any such financial assets, and thus the trial court acted arbitrarily in awarding those unknown assets to Wife.

However, Husband provided no evidence concerning the existence or value of these assets. "[W]hen a party does not provide values for property to be divided, that party may not complain on appeal that the trial court lacked sufficient information to properly divide the property." *Deltuva v. Deltuva*, 113 S.W.3d 882, 887 (Tex. App.—Dallas 2003, no pet.) (op. on reh'g).

Just the opposite, Husband insisted at trial that no such assets existed. During his testimony, he was confronted with bank records showing that he had received distributions from an undisclosed IRA account, but Husband continued to deny that he had any IRA accounts. Based on this evidence, the trial court found that husband failed to disclose an individual retirement account, deposits of which were evidenced by a bank statement in his name. Further, the trial court deemed Husband's testimony not credible. The trial court awarded Wife a disproportionate division in part because of what it termed Husband's "fraudulent actions," and one facet of that division was awarding Wife all of Husband's retirement accounts, pensions, annuities, and annuity life insurance benefits, though their exact value and status was

unknown. *See Rafidi v. Rafidi*, 718 S.W.2d 43, 45 (Tex. App.—Dallas 1986, no writ) (approving similar measures where the husband's stonewalling left "an unknown but substantial amount" of financial assets that had not been "disclosed to the Court and are unaccounted for").

Because Husband provided no information concerning the existence or value of the assets in question and instead acted to frustrate legal inquiry into these assets, he may not complain on appeal concerning deficiencies in their valuation and division. We overrule Husband's fourth issue.

## CONCLUSION

Husband asserted that no evidence supports the findings that he committed constructive fraud or used his company as an alter ego. The evidence supported these determinations. Husband protested the valuation and division of certain financial assets, but he may not complain about those decisions given that he provided no information to address their valuation and worked to thwart their division.

Accordingly, we affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

200787F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF M.H.A, AND Z.H.A., CHILDREN

No. 05-20-00787-CV

On Appeal from the 296th Judicial District Court, Collin County, Texas Trial Court Cause No. 296-53533-2018.
Opinion delivered by Justice Partida-Kipness. Justices Reichek and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Mervant Abufaris recover her costs of this appeal from appellant Husny Amerih.

Judgment entered this 7th day of July, 2022.