

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**

**FORT WORTH**

## NO. 02-15-00139-CV

ARNULFO HERNANDEZ                                               APPELLANT

V.

ATHELIA ROOKER                                                    APPELLEE

----------

FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 325-478228-10

----------

## MEMORANDUM OPINION[1]

----------

Appellant Arnulfo Hernandez appeals from the trial court's April 2, 2015 order holding him in contempt and reinstating a prior, suspended order establishing a receivership. We affirm the trial court's order as modified.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND

## A. CHILD SUPPORT AND RECEIVERSHIP

On May 24, 2010, appellee Athelia Rooker filed a petition to adjudicate parentage of her two children with Hernandez, whom she had never married. *See* Tex. Fam. Code Ann. §§ 160.202, 160.601 (West 2014). On May 2, 2012, the trial court entered a letter ruling, ordering that Rooker was appointed sole managing conservator and Hernandez was appointed possessory conservator of the children.[2] The trial court concluded that Hernandez had supported the children inconsistently since 2007 and, therefore, should pay past and future child-support payments in a lump sum—more than $200,000 as of the date of the letter ruling—and not in monthly installments.[3] *See id.* § 154.003 (West 2014). To that end, the trial court, in the letter ruling, appointed a receiver "to sell as many rental properties owned by [Hernandez]" as necessary to satisfy the amount. At the conclusion of the letter ruling, the trial court requested that Rooker's attorney "prepare the decree and . . . submit all orders to the Court no later than June 1, 2012." The record does not reflect that a decree or orders were submitted or signed in 2012.

---

[2]The order appears to be the result of a trial that was held on April 24, 2012. Neither the clerk's record nor the reporter's record contains any further information about this trial or the facts leading to the letter ruling.

[3]That same day, the trial court also entered the required findings in rendering a child-support order. *See* Tex. Fam. Code Ann. § 154.130 (West 2014).

## B. RULE 11 AGREEMENT AND SUSPENSION OF RECEIVERSHIP

Later in 2012, Hernandez and Rooker entered into a rule 11 agreement under which Rooker agreed to "be restrained from enforcement of the court's [letter ruling]," to "take no action to seek the appointment of a receiver to liquidate real property owned by [Hernandez]," and to allow Hernandez to make periodic, lump-sum payments into the court's registry for the support of the children. The agreement stated that Rooker would take a security interest in two of Hernandez's rental properties—a property on Calmont Avenue and a property on Westhaven Drive—until the full amount stipulated in the agreement was paid. The agreement was filed with the trial court on December 4, 2012. *See* Tex. R. Civ. P. 11.

On March 26, 2013, the trial court signed a formal order memorializing what was stated in the prior letter ruling, specifically appointing a receiver and giving him the sole discretion "to sell as many rental properties owned by [Hernandez]" as necessary to satisfy the arrearage, including but not limited to the Calmont property, a property on Sandy Lane, and a property in Burleson. Hernandez filed a motion for new trial on April 25, 2013, arguing that the March 26 appointment order was an abuse of discretion because the parties had filed their rule 11 agreement with the court on December 5, 2012, which expressly dispensed with the necessity of a receiver. The record does not reflect that the trial court expressly ruled on this motion, but there is a notation at the

3

bottom of the motion indicating that a hearing would not be "needed" because "[e]ntering 5-1 final order." There is no order dated May 1, 2013 in the record.

On July 2, 2013, the trial court entered two orders: (1) a second order appointing the same receiver to "take charge and possession" of Hernandez's "rental properties"—including the Calmont, Sandy, and Burleson properties and "any other real properties held in the name of [Hernandez]"—and giving the receiver the authority to "manage, control, and dispose of the property as he sees fit in his sole discretion" and (2) an agreed order memorializing the parties' rule 11 agreement, suspending the ordered receivership, and authorizing agreed, lump-sum payments into the court's registry. In the agreed order, the trial court ordered Hernandez to perfect a security interest in favor of Rooker in the Calmont and Westhaven properties. Further, the trial court restrained Hernandez from "otherwise encumbering" the Calmont and Westhaven properties "if such encumberment would affect [Rooker's] ability to exercise her security interest." The agreed order provided that if Hernandez failed to comply, Rooker could enforce the receivership order and would be entitled to recover her reasonable attorney's fees, court costs, and other expenses incurred in the course of enforcing the receivership order. No party attempted to appeal from these orders.

On September 26, 2013, Hernandez filed a petition to modify, requesting a temporary order reducing his child-support payments and ordering Rooker to pay child support. The trial court denied these requests.

4

## C. Enforcement of Receivership and First Contempt Order

On November 13, 2014, Rooker filed a first amended motion to reinstate and enforce the receivership and alleged that Hernandez was violating the agreed order by failing to make the agreed payments into the court's registry; by encumbering and transferring the Sandy and Calmont properties to M. Diaz Investments, LLC (MDI); by encumbering and transferring the Burleson property to his wife; and by encumbering the Westhaven property. Accordingly, Rooker requested that "the transfers of the [Sandy, Calmont, and Burleson] properties" be "overturn[ed]" and that Hernandez be held in contempt. Hernandez responded to the motion and argued that enforcement of the lump-sum payments would be "illegal" and that the agreed order was entered without his knowing consent based on his limited command of the English language.

On December 16, 2014, the trial court held a hearing on Rooker's motion for enforcement, found Hernandez in contempt, and signed an order of commitment without signing a judgment of contempt. Accordingly, this court granted Hernandez habeas corpus relief on January 22, 2015, and vacated the commitment order.[4] *See In re Hernandez*, No. 02-14-00396-CV, 2015 WL

---

[4]As requested by Hernandez, we have taken judicial notice of this court's record from his writ of habeas corpus. *See* Tex. R. Evid. 201. We note that Hernandez did not request that the court reporter prepare a reporter's record from the hearing leading to the 2014 contempt order, either in the underlying habeas corpus proceeding or in this appeal. *See* Tex. R. App. P. 31.1, 34.6(b)(1).

294094, at *1 (Tex. App.—Fort Worth Jan. 22, 2015, orig. proceeding) (mem. op.); *see also* Tex. R. App. P. 31.

### D. SECOND CONTEMPT ORDER AND REINSTATEMENT OF RECEIVER

On January 27, 2015, Rooker filed a motion asking the trial court to sign a second order holding Hernandez in contempt. On March 24, 2015, Hernandez filed a motion to vacate the December 2012 rule 11 agreement and to release the Calmont, Sandy, and Burleson properties from receivership because he had "no outstanding child support arrearages."

On April 2, 2015, the trial court held a hearing on Rooker's motion to sign and on Hernandez's motion to release and vacate. Nellie Perez testified at the hearing that she "help[s] investors with their evictions" and that she regularly does so for MDI. Perez stated that when MDI pays her, Hernandez's wife signs the checks. At the hearing, Hernandez offered and the trial court admitted into evidence two warranty deeds showing that he had conveyed title to the Westhaven and Calmont properties to MDI in exchange for $20 consideration on June 11, 2014, eleven months after the trial court entered the agreed order requiring Hernandez to perfect a security interest in favor of Rooker in those properties. At the conclusion of the hearing, the trial court orally denied Hernandez's motion to release the three properties from receivership. The trial court then signed an order that (1) found that Hernandez had violated the July 2, 2013 agreed order in many respects, including by transferring title to the Calmont property and by failing to pay the agreed, lump-sum payments; (2) revoked the

6

order suspending the receivership; (3) ordered the receiver to perform the duties provided in the July 2, 2013 order; and (4) taxed Rooker's attorney's fees, expenses, and costs in the amount of $4,000 against Hernandez.[5]

### E. POST-HEARING PROCEDURE

On April 14, 2015, Hernandez filed a request for findings of fact and conclusions of law regarding the trial court's April 2, 2015 "judgment." *See* Tex. R. Civ. P. 296. He filed a second request and a notice of appeal on April 22, 2015 from the trial court's April 2, 2015 order. On April 29, 2015, the trial court signed an order denying Hernandez's motion to release his property and to vacate the rule 11 agreement. Hernandez filed notices of past due findings and conclusions on May 13, 2015. *See* Tex. R. Civ. P. 297. The trial court signed findings and conclusions on December 22, 2015.

On appeal, Hernandez attacks the trial court's April 2, 2015 order enforcing the receivership in six issues, which may be distilled into two general arguments: (1) the trial court did not have jurisdiction over the properties ordered into receivership and (2) receivership was not an appropriate remedy. He also argues that the contempt order violated due process, that the trial court erred by failing to enter findings and conclusions upon request, and that the evidence did not support the attorney-fee award.

---

[5]The trial court recognized our prior disposition on habeas corpus and stated that Hernandez "has fulfilled the punishment ordered by the Court." The trial court's order was substantially similar to the order Rooker moved the court to sign in her January 27, 2015 motion.

7

## II. ESTABLISHMENT OF RECEIVERSHIP IN 2013

In her brief, Rooker argues that this court does not have jurisdiction over this appeal because Hernandez's complaints challenge the July 2, 2013 order appointing the receiver, which was merely reinstated on April 2, 2015. Therefore, Rooker contends that Hernandez's April 22, 2015 notice of appeal was untimely and did not confer appellate jurisdiction to review the appointment of the receiver. *See* Tex. R. App. P. 26.1. Hernandez has not squarely addressed Rooker's jurisdictional argument.

At the outset of this appeal, we expressed to the parties our concern that we did not have jurisdiction over Hernandez's appeal because we believed that the contempt order Hernandez challenged was not final or otherwise appealable. Hernandez responded and we continued the appeal at that time, but we again must examine our jurisdiction based on Rooker's argument that Hernandez's notice of appeal was untimely.

As we explained above, Hernandez argues in six of his issues that the trial court did not have the power to order the rental properties into receivership and that receivership was not an available remedy. These claims relate solely to the trial court's ultimate authority to enter the 2013 orders establishing the receivership and conferring powers and duties on the appointed receiver. Indeed, in its April 2, 2015 order revoking the suspension of the 2013 receivership, the trial court merely stated that the previously appointed receiver

8

"shall perform the duties set out under the receivership previously ordered by this Court in the Order Appointing Receiver signed by this court on July 2, 2013."

The trial court appointed the receiver in 2013. Although the trial court suspended the receivership on July 2, 2013 in an agreed order, the trial court suspended, but did not vacate, the established receivership based on the parties' rule 11 agreement filed on December 4, 2012 and signed by Hernandez, which relied on and recognized that Rooker could seek to enforce the court's order through liquidation by a receiver if Hernandez failed to comply with the terms of the order, including granting Rooker a security interest in the Calmont and Westhaven properties. Accordingly, Hernandez's complaints regarding the trial court's authority to initially establish the receivership, appoint the receiver, and authorize him to manage or sell the properties arose at the time the receivership was established in 2013. *See Gibson v. Cuellar*, 440 S.W.3d 150, 155–56 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *Fortenberry v. Cavanaugh*, No. 03-07-00310-CV, 2008 WL 4997568, at *21–24 (Tex. App.—Austin Nov. 26, 2008, pet. denied) (mem. op.). The ordered receivership was never vacated, but was merely suspended pending Hernandez's compliance with the rule 11 agreement. Thus, Hernandez's complaints that the receivership should never have been established in the first place were untimely because he raised them for the first time approximately two years after the receivership was established by the trial court and after Rooker agreed to a suspension of the enforcement of the

9

receivership's terms in reliance on her ability to later enforce it.[6]
*See Fortenberry*, 2008 WL 4997568, at *21–24; *Sclafani v. Sclafani*, 870 S.W.2d
608, 610–13 (Tex. App.—Houston [1st Dist.] 1993, writ denied). We dismiss
Hernandez's issues two, three, four, five, six, and nine because Hernandez's
2015 notice of appeal does not vest this court with jurisdiction to review the
establishment of the receivership in 2013.

## III. CONTEMPT ORDER IN 2015

In his first issue, Hernandez argues that the April 2, 2015 order holding him
in contempt was void because he did not receive notice that he could be held in
contempt as required by due process. In his eighth issue, he asserts that the
evidence did not support the award of attorney's fees to Rooker. His seventh
issue attacks the failure of the trial court to enter findings and conclusions upon
request regarding the contempt order. These issues attack portions of the 2015
order that were independent of the prior establishment of the receivership.

### A. DUE PROCESS

Hernandez asserts that because we vacated the commitment order on
habeas corpus, the trial court violated due process by entering a subsequent
commitment order and contempt judgment without a renewed motion for

---

[6]Additionally, because the April 2, 2015 order did not appoint a receiver or initially establish a receivership, section 51.014(a)(1) would not apply to confer appellate jurisdiction on Hernandez's attempted accelerated appeal from the trial court's April 2, 2015 order. *See, e.g.*, *Wells Fargo Bank, N.A. v. JRK Villages at Meyerland, LLC*, No. 01-10-01076-CV, 2011 WL 61170, at *1 (Tex. App.—Houston [1st Dist.] Jan. 6, 2011, no pet.) (mem. op.).

enforcement or a hearing on that motion. He additionally contends that the April 2, 2015 commitment order was too remote in time from the December 16, 2014 hearing on Rooker's motion for enforcement to satisfy due process.

First, the trial court did not sign a commitment order in connection with the 2015 order revoking the suspension of the receivership and finding Hernandez in contempt of the 2013 agreed order. The trial court addressed Hernandez's concern that the factual recounting of its prior commitment order in the proposed order would support the entry of a later commitment judgment by including a handwritten notation: "IT is Therefore Ordered that [Hernandez] has fulfilled the punishment [previously] ordered by the Court." Once this change was made, Hernandez had no further objection to the alleged commitment language. Second, a hearing was indeed held on Rooker's motion to sign and on Hernandez's motion to release the properties from receivership and vacate the parties' rule 11 agreement. The contempt issue was raised at this hearing and Hernandez specifically requested the trial court to take judicial notice of "the previous proceedings and dealings in this matter" in ruling on the motions, which would include any evidence relating to Hernandez's contempt of the 2013 agreed order.

By failing to further object to the form of the April 2, 2015 order, although given the opportunity to do so, he has waived his due-process arguments directed to the possible commitment language or the timing of the order. *Cf. In re L.M.I.,* 119 S.W.3d 707, 710–11 (Tex. 2003) (in termination appeal, concluding

11

argument that termination violated parent's right to due process was waived when not raised to the trial court), *cert. denied*, 541 U.S. 1043 (2004). Additionally, the cases cited by Hernandez in his brief to support his due-process argument are wholly distinguishable because they are cases arising from a commitment order, which did not occur here. *See Ex parte Anderson*, 900 S.W.2d 333, 334–35 (Tex. 1995) (orig. proceeding); *Ex parte Delcourt*, 888 S.W.2d 811, 812 (Tex. 1994) (orig. proceeding) (op. on reh'g); *In re Spates*, No. 14-14-00603-CV, 2014 WL 4262197, at *4 (Tex. App.—Houston [14th Dist.] Aug. 28, 2014, orig. proceeding) (mem. op.). Even if the April 2, 2015 order could be construed to be a contempt order reviewable for violations of due process, we would not have appellate jurisdiction over Hernandez's complaints directed to that portion of the order. *See In re Office of Attorney Gen. of Tex.*, 215 S.W.3d 913, 915 (Tex. App.—Fort Worth 2007, orig. proceeding); *cf. In re E.H.G.*, No. 04-08-00579-CV, 2009 WL 1406246, at *5 (Tex. App.—San Antonio May 20, 2009, no pet.) (mem. op.) ("If a motion to enforce includes a request for both a contempt finding and a money judgment for child support arrearage, an appellate court has jurisdiction to address the arrearage judgment because it is unrelated to the contempt order."). We overrule issue one.

## B. ATTORNEY'S FEES

In his eighth issue, Hernandez argues that there was no evidence that the awarded attorney's fees were reasonable and necessary. He relies on the fact that Rooker failed to plead for attorney's fees in her motion to sign. Rooker

12

points out on appeal that she pleaded for her attorney's fees in her motion to enforce, which led to the 2014 contempt order, and argues that an award of attorney's fees is mandatory in an enforcement action. *See* Tex. Fam. Code Ann. § 157.167 (West 2014); *cf. E.H.G.*, 2009 WL 1406246, at *5 (recognizing appellate court has jurisdiction over challenges to portions of judgment that are independent of contempt order).

At the hearing on Rooker's motion to sign, Rooker's attorney attempted to testify regarding the time she spent seeking the entry of a second contempt order. Hernandez objected to this testimony based on Rooker's failure to plead for attorney's fees in her motion to sign, which the trial court sustained. Even though an award of attorney's fees is mandated by section 157.167, Rooker had the burden to plead for and produce evidence of the requested amount of attorney's fees. *See In re A.L.S.*, 338 S.W.3d 59, 69–70 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). This she did not do. The fact that Rooker pleaded for attorney's fees in her 2014 motion to enforce does not satisfy her burden of pleading or proof regarding the attorney's fees she incurred regarding the 2015 motion to sign. We sustain issue eight.

### C. FINDINGS AND CONCLUSIONS

In his seventh issue, Hernandez argues that the trial court erred by failing to enter findings and conclusions regarding its April 2, 2015 order even though he timely requested them. *See* Tex. R. Civ. P. 296–97. The record reflects that the trial court did enter findings and conclusions on December 22, 2015—more

than forty days after Hernandez's May 13, 2015 notice of past-due findings. *See* Tex. R. Civ. P. 297. In the absence of requested findings and conclusions, we presume harm unless the record affirmatively shows that Hernandez was not harmed by their absence. *See Watts v. Oliver*, 396 S.W.3d 124, 130 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Here, the record affirmatively shows that Hernandez was not harmed by the absence of timely findings and conclusions. *See Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). The April 2, 2015 order itself contains multiple factual findings and legal conclusions, and there is no indication that Hernandez was prevented from presenting a complete appellate argument as a result of the absence of timely findings and conclusions. *See Robles v. Robles*, 965 S.W.2d 605, 611 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (op. on reh'g). Additionally, the trial court's action in filing findings and conclusions, even though outside the forty-day deadline, remedied any harm arising from their untimeliness. *See Kramer v. Weir SPM*, No. 02-13-00093-CV, 2014 WL 3953928, at *2 (Tex. App.—Fort Worth Aug. 14, 2014, pet. denied) (mem. op.). We overrule issue seven.

## IV. CONCLUSION

Because Hernandez attempts to attack the establishment of the receivership in 2013 in issues two, three, four, five, six, and nine, we dismiss those issues for want of jurisdiction. We also overrule issues one and seven. But because Rooker did not plead for and offered no evidence in support of a request for attorney's fees regarding the motion to sign, we sustain issue eight.

14

Therefore, we modify the trial court's April 2, 2015 order to delete the award of attorney's fees, and affirm it as modified. *See* Tex. R. App. P. 43.2(b).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  GARDNER, GABRIEL, and SUDDERTH, JJ.

DELIVERED:  July 28, 2016